· LITCHFIELD V. THE COUNTY OF HAMILTON ET AL.

1. **Public Lands:** DES MOINES RIVER GRANT: TAXATION. The acts of Congress of March 2, 1861 and July 12, 1862, confirm the title to the Des Moines river land grant in the State and its grantees from the date of the original grant in 1846, and the lands are liable to taxation in the hands of purchasers, or their grantees, for all years subsequent to the date of the conveyance to such purchasers. Following *Stryker v. Polk County,* 22 Iowa, 131.

2. **Taxation:** EQUITY. Mere irregularities in the assessment or levy of taxes will not justify the interference of equity to stay their collection.

3. ——: WHEN TITLE IS DOUBTFUL. Equity will not relieve the taxpayer from liability for interest and penalties for the non-payment of his taxes, merely because his title to the property taxed is in doubt.

*Appeal from Hamilton District Court.*

TUESDAY, OCTOBER 27.

ACTION in chancery brought in December, 1868, to enjoin the sale of lands of plaintiff, situate in Hamilton county, for taxes levied from the years 1859 to 1865, inclusive, and to enforce an equitable rebatement of interest and penalties upon such taxes as were levied after the lands became subject to taxation, as claimed by plaintiff. Like relief is claimed for other parties having common interest in the questions involved in the case.

The cause was submitted to the court upon bill, answer, exhibits and evidence, and a decree rendered November 23d, 1872, enjoining the sale of the lands for the taxes levied for 1859 and 1860, and dismissing the petition as to this other relief claimed. Judgment was rendered against plaintiff, and his sureties on the bond given upon issuing the preliminary injunction, in the sum of $150, being the damages sustained by defendant. Both parties appeal.

*J. M. Elwood,* for plaintiff.

*W. J. Covil,* for defendant.

BECK, J.—The lands upon which the taxes in question were levied are a part of the Des Moines River Grant, and on the 3d day of May, 1858, were by patent conveyed by the State to the "De Moine" Navigation and Railroad Company, plaintiff's grantor. From the time these lands were certified by the Secretary of the Interior to the State of Iowa, under the act granting them, which was approved August 8, 1846, the officers of the State and United States, and all parties claiming under the grant, regarded the title based on it as valid. The United States Supreme Court, on the 9th of April, 1860, in the case of *Litchfield v. The Dubuque & Pacific Railroad Company*, 23 Howard, 66, decided that the grant of August 8, 1846, did not cover lands. north or above the Raccoon Fork of the Des Moines river. The lands upon which the taxes in question were based lie above that branch of the river, and under this decree were excluded from the grant.

*1. PUBLIC LANDS: Des Moines river grant: taxation.*

On the 2d day of March, 1861, for the purpose of securing and perfecting to *bona fide* purchasers under the State the title of the lands above the Raccoon Fork, which had been previously certified to the State under the act of August 8, 1846, Congress adopted a joint resolution, releasing to the State of Iowa these lands. An act of Congress of July 12, 1862, for the purpose of confirming the title to the lands, supposed to have been granted by the act of August 8, 1846, to the State of Iowa, extended the grant to the northern line of the State.

The lands of plaintiff are held under these acts of Congress and the patent from the State. They were assessed for taxation and taxes levied thereon in 1859, and in each subsequent year up to and including 1865.

Plaintiff insists that these lands were not taxable until after the confirmatory acts above referred to. The position is assumed on the ground that the title, up to that time, was in the United States, and the State could not, therefore, levy taxes upon the lands until the plaintiff, or his grantor, had acquired title.

This precise question was determined in *Stryker v. Polk*

*County*, 22 Iowa, 131.   The title to the lands held subject to taxation in that case was derived under the same grant, and in fact the lands were a part of the grant situate above the Raccoon Fork.   The same legislation, both state and national, was involved in that case as in this.   The facts, so far as this point is concerned in this case, differ in no respect from those of that.   It was held that the lands were taxable for 1859 and subsequent years.   The decision is based upon the doctrine that the confirmatory Congressional legislation related back to the first grant by the State, and perfected the title from that date.   It is supported by the following cases:   *U. S. v. Arredondo*, 6 Pet., 691–713; *Ross v. Supervisors, etc.*, 12 Wis., 26.

The lands were assessed and taxed in 1859, under Chapter 152, Acts Seventh General Assembly.   No such provision is found in that statute as Rev., § 711, upon which plaintiff's counsel bases an argument in support of the position that the lands were not taxable until one year after their purchase of the State.

II.   It is next urged that the officers of Hamilton county, in the assessment, levy and equalization of the taxes, failed to observe the requirements of the statute, and these proceedings were irregular and defective.

These irregularities consist, 1st, in the classification of the lands by the Supervisors as to their values; 2d, the assessment of the lands to unknown owners in eighty acre tracts; 3d, the want of a warrant to the tax list; 4th, the failure of the treasurer to offer the lands for sale at a time required by law.

2. TAXATION: equity.

1.   It is not alleged that the assessment was excessive or unjust.   Plaintiff, therefore, cannot claim relief here from an irregular assessment that works him no prejudice.

2.   The abstract does not show that the assessment was made in larger tracts than is authorized by law.

3.   The authority for the collection of taxes and sale of land therefor is found in the statute, and a warrant is not essential. *Parker v. Sexton*, 29 Iowa, 425; *Hurley v. Powell, Levy & Co.*, 31 Iowa, 65.

4.   The failure to sell plaintiff's land for the taxes due at a

time when the sale could have been made, did not defeat the right to sell at a subsequent date.

Revision, Sec. 763, requires the treasurer to offer for sale all lands at a time therein named, for the delinquent taxes of prior years. There is nothing in the section which authorizes the construction that a sale can be made at no other time. On the contrary, it expressly contemplates the case of delinquent taxes for years prior to the one in which the sale is had. The legislature clearly contemplated conferring power to sell, at any regular sale, the lands for all prior delinquent taxes, and no reservation is made limiting the power so that it will not extend to lands that could have been before sold.

But a familiar principle of law, recognized by this court, may be stated as a general answer to all these objections which are based upon mere irregularities, and not upon want of power. Equity will not interfere to stay the collection of taxes authorized by law, to which the property is justly liable, on account of mere irregularities. *Conway v. Younkin*, 28 Iowa, 295.

It is not shown in this case that there was a want of power to levy the taxes, that the property is not justly liable thereto, or that they are excessive. Equity will not grant relief to parties to discharge them of public burdens which they ought justly to share.

III. It is lastly insisted that equity will relieve plaintiff of the interest and penalties which have accrued upon the taxes, 3. ——: when on the grounds that the title to the land for a long title is doubt-ful. time was in doubt and uncertainty; that the officers of the national government disputed or would not recognize plaintiff's title, and sold portions of said lands, and that a railroad company, claiming adversely to plaintiff, conveyed other tracts, which have been entered upon by the purchasers, greatly to plaintiff's damage. Other matters of this kind are alleged as equitable reasons for the abatement of interest and penalties. It is claimed by plaintiff that this court held, *Stryker v. Polk County, supra*, these facts entitled plaintiff to the relief claimed. We do not find that it was so decided in that case. It would certainly greatly retard

the collection of the state revenue to establish the rule that parties holding doubtful titles should be relieved of the duty of promptly paying their taxes, and should not be liable for the interest and penalties prescribed by law. The case made by plaintiff is simply a case of disputed title. The county or state did or suffered nothing to affect prejudicially plaintiff's title. There is no reason why defendant should be deprived of its lawful claim on account of the misfortune of plaintiff, caused without its fault.

We have held in a recent case that a court of equity, where parties in good faith contested the validity of taxes, could not relieve them of the interest and penalties prescribed by statute for delinquent taxes. The equities in that case were quite as persuasive as in this. *C. R. & M. R. Railroad Co. v. Carroll Co., post.*

The foregoing considerations dispose of all the points made in this case. A decree will be entered here dissolving the injunction and dismissing plaintiff's petition as to all the taxes and penalties for all the years mentioned in his petition. The county will be at liberty to collect all of them. There is not sufficient evidence in the abstracts before us to authorize the allowance of damages on the injunction bond. Costs of this court will be equally divided.

REVERSED ON BOTH APPEALS.