GOODNOW v. WELLS ET AL.

1. **Taxes on Land:** PAYMENT THROUGH MISTAKE AS TO TITLE: RECOVERY FROM REAL OWNER: INTEREST: LIEN: STATUTE OF LIMITATIONS: FORMER ADJUDICATION. Many of the questions raised in this case, having been often determined by this court, (see cases cited,) are not again argued in the opinion.

2. **Practice in Supreme Court:** ERRORS NOT ARGUED NOT CONSIDERED. Errors, though assigned, will not be considered unless urged in argument.

3. **Administrator:** ACTION IN CHANCERY AGAINST TO ENFORCE LIEN: KIND OF PROCEEDINGS: OBJECTION TOO LATE. The enforcement of a lien upon the land of a decedent could not be procured in probate proceedings, and an action therefor was rightly brought in chancery; and, even if the proceedings could and should have been in probate, the administrator, after appearing and defending in the court below, without making objection there to the kind of proceedings, could not make such objections for the first time in this court.

4. **Public Lands:** DES MOINES RIVER GRANT: WHEN LANDS BECAME TAXABLE: REVISION OF 1860, § 711. Lands acquired from the state of Iowa under the Des Moines river grant became taxable the year after the purchase thereof from the state, under § 711 of the Revision of 1860, regardless of the date when the grant was confirmed to the state by act of congress. Such confirmation related back to the date of the purchase from the state, and inured to the benefit of the purchaser. See cases cited in opinion.

5. **State and Federal Supreme Courts:** INTERPRETATION OF STATUTES OF STATE: CONFLICT OF DECISIONS: WHICH PREVAILS: ILLUSTRATION. It is a rule nowhere disputed that the decisions of the supreme court of a state, interpreting a statute of such state, must be followed by the federal courts; and where the supreme court of the United States, upon a mistaken view of the purport and effect of the decisions of the supreme court of the state in such a case, renders a decision in conflict therewith, such decision is not binding on the state courts. For this reason, the opinion of the supreme court of the United States in *Litchfield v. County of Webster*, 101 U. S., 773, which construes § 711 of the Revision of 1860, and holds that under it lands are not taxable until the next year after a patent could be demanded for them, being based upon a misunderstanding of decisions of this court in cases cited in the opinion, and in conflict with those decisions, is not to be followed by this court.

*Appeal from Webster Circuit Court.*

MONDAY, DECEMBER 14.

ACTION in chancery to recover for certain taxes paid by plaintiff's assignor upon lands, the title whereof was in the defendants or their grantors, and to enforce a lien upon the lands for the amount of the taxes paid. The relief prayed for by the plaintiff was granted by the decree of the circuit court, from which defendants appeal.

*Theodore Hawley*, for appellants.

*George Crane*, for appellee.

BECK, CH. J.—I. This action involves no facts or questions of law which have not before been presented to and determined by this court in the numerous cases brought to recover taxes paid upon lands by claimants thereto under the grant by congress to the Dubuque & Sioux City Railroad Company. These actions, as well as this, were prosecuted against the claimants under what is called the "Des Moines River Grant," and a subsequent joint resolution of congress of March 2, 1861, which, by the decision of the United States supreme court, were held to pass the title to the lands as against the railroad grant. By reference to the following cases, the legislation and other facts involved in the questions arising in regard to the right of the claimants, under the railroad grant, to recover for taxes paid by them against the holders of the title under the Des Moines River grant, may be fully discovered. *Iowa Homestead Co. v. Webster Co.*, 21 Iowa, 221; *Dubuque & P. R. Co. v. Webster Co.*, Id., 235; *Stryker v. Polk Co.*, 22 Id., 131; *Litchfield v. Hamilton Co.*, 40 Id., 66; *Goodnow v. Litchfield*, 59 Id., 226; *Goodnow v. Stryker*, 61 Id., 261; *Same v. Same*, 62 Id., 221; *Goodnow v. Litchfield*, 63 Id., 225;

*[Margin note: 1. TAXES on land: payment through mistake as to title: recovery from real owner: interest: lien: statute of limitations: former adjudication.]*

*Goodnow v. Moulton*, 51 Id., 555; *Litchfield v. County of Webster*, 101 U. S., 774; *Wolcott v. Des Moines Co.*, 5 Wall., 681; *Homestead Co. v. Valley Railroad*, 17 Id., 153.

II. It is insisted by counsel for defendant that the action is barred by the statute of limitations of the state of New York; that a decision in a prior action operates as an adjudication of the rights of the parties in this case; and that the circuit court erred in allowing interest upon the sum paid by plaintiff from the date of payment. But these precise points have been decided by this court, upon the same state of facts, adversely to the position of defendant's counsel. See *Goodnow v. Stryker*, 62 Iowa, 221; *Goodnow v. Litchfield*, 63 Id., 226.

III. Objections are made to the decree upon the ground that a lien is enforced against certain specified land and upon the lands owned by certain defendants. These objections are not argued. Attention is called to them briefly by what would probably be considered sufficient as an assignment of errors. But it cannot be claimed that there is an attempt to argue the objections. Under a familiar rule, we are not permitted to consider objections that are not argued.

2. PRACTICE in supreme court: errors not argued not considered.

IV. One of the defendants, J. P. Doliver, is an administrator, and his intestate held title to the land, and, if alive, would have been liable to plaintiff on account of the taxes paid by him. The decree runs against the administrator, and is made a lien on the lands upon which the taxes in question were levied. Counsel for defendant now object to the decree "because the claim upon which this action is brought had never been stated, sworn to and filed, and a copy served on the administrator; nor had the same been approved by the administrator." This objection was first made in this court, and was urged in no form in the circuit court. The administrator appeared, and answered in the case, urging many

3. ADMINISTRATOR: action in chancery against to enforce lien: kind of proceedings: objection too late.

defenses, but nothing of this kind. If there is anything in it, the objection comes too late. The circuit court has jurisdiction of the parties and the subject-matter of the action, and could have entertained proceedings for the allowance of the claim as is done in probate cases. It also has jurisdiction of the case in law or chancery, if it may be prosecuted in either forum. Now, if the case should have been prosecuted by probate proceedings, the defendant, having appeared and presented defenses in this action, cannot now defeat it on the ground that the claim should have been proved in the manner prescribed for probate cases. It is simply the case of the prosecution of an action by wrong proceedings. In addition to this, it may be said that the relief sought in this action is the enforcement of a lien, which could not have been obtained in probate proceedings. The action was therefore rightly brought in chancery. *Baldwin v. Tuttle*, 23 Iowa, 66; *McCrary v. Deming*, 38 Id., 527; *McName v. Malvin*, 56 Id., 362.

V. It is insisted that the evidence fails to show an assignment of the claim to plaintiff, and that he is not, therefore, the real party in interest. But the abstract before us shows that the due assignment of the claim to plaintiff is admitted.

VI. The plaintiff's grantors claimed title to these lands under a grant of congress made in 1856 to the Dubuque & Pacific Railroad Company. Defendant acquired title thereto under a grant by congress made in 1846, and confirmed and extended by a joint resolution of congress of March 2, 1861. This resolution confirmed the grant as to all lands above the Raccoon Forks which were held by *bona fide* purchasers under the state. The state conveyed the land to defendant's grantors in 1858. Now, it is plain that, upon the passage and approval of the join resolution, the title of the land passed from the federal government to the grantee of the state. The state had conveyed the land, though at the time it held no title; but the joint resolution, if it did not directly vest the

4. PUBLIC lands: Des Moines river grant: when lands became taxable: revision of 1860, § 711.

title in the state's grantee, did vest it in the state, and that title inured to the benefit of the grantee, who thereby became clothed with the title. See *Wolcott v. Des Moines Co.*, 5 Wall., 681, 687. The lands in question are above the Raccoon Forks, and are covered by the legislation and conveyance referred to above. The act of congress of July 12, 1862, extending the grant of 1846 to all alternate sections of odd numbers within five miles of the Des Moines river above the Raccoon Forks, does not apply to or affect the lands in controversy, for they had already been confirmed to the state and its grantees by the joint resolution of March 2, 1861. We discover that the title fully vested in defendant's grantors March 2, 1861. Under the laws of the state then in force (Revision, § 710) all property was taxable except such as was exempted by Revision, § 711, which provides (page 7) that government lands entered or located, or lands purchased from the state, shall not be taxed for the year in which the entry, location or purchase is made. The terms "enter" and "locate," when applied to the acquisition of lands from the government, have a fixed and certain meaning, and cannot be applied to the grants of land by a congressional act. Lands are "entered" when purchased at the government land-office, and "located" when "scrip," or other instruments calling for specified quantities of land, are used in the purchase of the lands, which are then said to be "located" under these instruments.

It is a familiar rule that congressional grants of lands of the character of the one under which defendants claim operate *in præsenti*, and pass the title without conveyances or other assurances. It sometimes is necessary to select or otherwise designate the lands which are conveyed by the grant, but that was not necessary in the case of the grant in question. It cannot be said that the lands of defendants were "entered" or "located." They were in fact conveyed by a congressional grant. It is clear that the provision above quoted, excepting lands from taxation, does not apply to these lands as

having been "entered" or "located." The lands were not *purchased* from the state in 1861, but in 1858, and the legislation and patent of the state conveyed the state's interest in the land; and the interest afterwards acquired by the state inured to the purchaser, and his title, by relation, ran back to the grant by the state. See *Wolcott v. Des Moines Co., supra.* The lands, then, cannot be exempt from taxation as having been purchased from the state in 1861. We reach the very satisfactory conclusion that the lands were subject to taxation for the year 1861. We have heretofore held that lands acquired under the Des Moines river grant were taxable for the year 1861. See *Stryker v. Polk Co.*, 22 Iowa, 131; *Litchfield v. County of Hamilton*, 40 Id., 66; *Goodnow v. Stryker*, 62 Id., 221.

VII. Counsel for defendant, in support of the position that, under section 711 of the Revision, the lands in question were exempt from taxation for the year 1861, cites *Litchfield v. County of Webster*, 101 U. S., 773, which construes that section, and holds that under it lands are not taxable "until the next year after a patent could be demanded for them." This decision is based upon a mistaken view of the purport and effect of the decisions of this court in *McGregor & M. R. R. Co. v. Brown*, 39 Iowa, 655; *Iowa Falls & S. C. R. Co. v. Cherokee Co.*, 37 Id., 483; *Goodrich v. Beaman,* Id., 563; *Iowa Falls & S. C. R. Co. v. Woodbury Co.*, 38 Id., 498. These decisions hold that lands acquired through a congressional grant to the state, and by a grant of the state, become taxable when the conditions of the grants are performed,—or, in other words, when the lands have been "earned" by the grantee by the performance of the conditions of the grant,—and that the patent for the lands issued by the governor of the state is evidence that the lands were, at the time of the issuance thereof, so "earned." These cases do not hold that lands are not taxable until patents are issued therefor. When patents are spoken of in these decis-

5. STATE and federal supreme courts: interpretation of statutes of state: conflict of decisions: which prevails: illustration.

ions, conveyances from the state by the governor are meant. As a matter of fact the United States has never patented lands to the state under the Des Moines river grants. Therefore the word "patent," when used by this court and the United States supreme court in connection with these lands, must be understood to refer to conveyances made by the state. The doctrine of this court is that lands held under the congressional and state grants, as are the lands involved in this action, are taxable when earned under the conditions of the grant, of which patents issued by the governor of the state are evidence. As we have seen, the lands in question were conveyed by the state in 1858 to defendant's grantor. They were therefore taxable for subsequent years. Doubtless the supreme court of the United States was misled by the last sentence in the opinion of this court in *McGregor, etc., R. Co. v. Brown, supra*, which, it must be admitted, is not an accurate expression of the effect of the statute and our prior decisions, if the word "patented" is to be understood as referring to a conveyance by the United States. The sentence is in these words: "Government lands are not taxable until a year after they are patented;" citing Rev., 1860, § 711. The statute cited declares that lands are not taxable until the next year after they were "entered" or "located" or "purchased from" the state. Lands "entered" and "located" may be and often are taxed before patents are issued, which are sometimes delayed for many months. It is plain that the word "patented" is used in the quotation just presented with reference to conveyance by the state, and not to patents by the United States. The decision of the United States supreme court interpreting the statute of this state in question is clearly incorrect, and in conflict with prior decisions of this court. We cannot, of course, be expected to follow it and overrule our prior decisions. It is a rule nowhere disputed that the decisions of the supreme court of a state interpreting a statute of such a state must be followed by the federal courts.

The foregoing discussion disposes of all questions in the case. The judgment of the circuit court must be

AFFIRMED.