# STRYKER *v.* GOODNOW'S ADMINISTRATOR.

## CHAPMAN *v.* SAME.

## WELLES *v.* SAME.

## LITCHFIELD *v.* SAME.

## LITCHFIELD *v.* SAME.

ERROR TO THE SUPREME COURT OF THE STATE OF IOWA.

Argued November 1, 1887. — Decided December 5, 1887.

Upon the record in this case, the question whether the lands of the plaintiffs in error were taxable is not a Federal question, but is one on which

the decision of the highest court of the State of Iowa is conclusive; and it is not reviewable here.

*Homestead Company* v. *Valley Railroad*, 17 Wall. 153, is a judicial precedent, which might have been referred to as a reason for holding that taxes paid, under the circumstances in which the payments of taxes in contention in these suits were made, cannot be recovered by the party paying them from the true owners of the land; but it is no bar, as an estoppel, to the recovery in these cases.

The judgment of this court in *Wolcott* v. *Des Moines Company*, 5 Wall. 681, while it may be referred to by the parties in this suit as a judicial precedent, does not operate as an estoppel against the defendant in error.

The filing of a brief in a suit by a person interested in the question to be decided, but not a party to the suit, does not estop him in a suit of his own from presenting the same question.

In equity, in a state court of Iowa, to recover from the plaintiffs in error, defendants below, sums of money alleged to have been paid by defendant in error on lands in Iowa adjudged to be the property of the plaintiffs in error; and also to have the several amounts of the taxes decreed to be special liens on the lands. ' Decrees awarding the relief asked for by the plaintiff below, to review which these writs of error were sued out. The case, and what was claimed to make the Federal question, are stated in the opinion.

*Mr. C. H. Gatch* for plaintiffs in error. *Mr. William Connor* was with him on the brief.

*Mr. George Crane* for defendant in error.

Mr. Chief Justice Waite delivered the opinion of the court.

These suits all grew out of the delay which attended the settlement of the controversies in reference to the Des Moines River improvement land grant made by Congress to the Territory of Iowa, August 8, 1846, which will be hereafter referred to as the river grant. 9 Stat. 77, c. 103. The character of those controversies may be seen by referring to the cases of *Dubuque and Pacific Railroad* v. *Litchfield*, 23 How. 66; *Wolcott* v. *Des Moines Company*, 5 Wall. 681; *Williams* v.

*Baker,* 17 Wall. 144 ; *Homestr ... Company* v. *Valley Railroad,*
17 Wall. 153 ; and *Wolsey* v. *Chapman,* 101 U. S. 755. At
first it was supposed, both by the officers of the United States
and of the State, that the grant embraced lands above the
Raccoon Fork of the river, and the State of Iowa made con-
veyances to the Des Moines Navigation and Railroad Com-
pany, under which John Stryker, Richard B. Chapman, Grace
H. Litchfield, Edwin C. Litchfield, J. B. Plumb, and William
B. Welles each claimed title to separate tracts in that locality
as *bona fide* purchasers.

On the 15th of May, 1856, Congress made another grant of
lands to the State to aid in the construction of railroads. 11
Stat. 9, c. 28. This grant conflicted with the river grant if
the last-named grant extended above the Raccoon Fork. The
title of the State under the railroad grant to some of the lands
above the Fork, was transferred to the Dubuque and Pacific
Railroad Company, and that company, on the 25th of October,
1859, began a suit in ejectment against Edwin C. Litchfield to
recover possession of one of the tracts. In that suit it was de-
cided by this court, April 9, 1860, that the river grant did not
extend above the Fork. *Dubuque and Pacific Railroad* v.
*Litchfield, ubi supra.* Thereupon Congress, on the 2d of
March, 1861, passed a joint resolution relinquishing the inter-
est of the United States in the lands above the Fork to the
State for the benefit of *bona fide* purchasers under the river
grant.

The Des Moines Navigation and Railroad Company, holding
title from the State to the lands above the Fork under the
river grant, conveyed one of the tracts, on the 8th of August,
1859, to Samuel G. Wolcott, by deed, with full covenants of
warranty. In 1865, Wolcott brought suit against the Naviga-
tion and Railroad Company in the Circuit Court of the United
States for the Southern District of New York to recover dam-
ages for a breach of the covenants in that deed, alleging that
the title had failed. In that case it was decided by this court,
May 13, 1867, that the railroad grant in 1856 did not include
any of the lands above the Raccoon Fork which had been
claimed under the river grant, and that the title of Wolcott

under his deed from the Navigation and Railroad Company had not failed. *Wolcott* v. *Des Moines Co., ubi supra.* While that case was pending in this court, the attorney of the Dubuque and Pacific Railroad Company was allowed to file a brief in support of the claim of Wolcott that the title was in that company and not in the Navigation Company.

The title which the Dubuque and Pacific Railroad Company claimed from the State under the railroad grant passed to the Dubuque and Sioux City Railroad Company in the month of August, 1861, and that company afterwards paid the taxes assessed and levied on the lands in dispute for the years 1861, 1862, and 1863. Those for the year 1861 were paid October 31, 1866; those for 1862, December 9, 1863; and those for 1863, January 20, 1864. On the 12th of November, 1863, the Railroad Company conveyed to the Iowa Homestead Company, an Iowa corporation, its title to the lands in dispute between the Railroad Company and the claimants under the river grant. The Homestead Company afterwards paid the taxes on the lands for the years 1864, 1865, 1866, 1867, 1868, 1869, 1870, and 1871.

On the 12th of October, 1869, the Homestead Company began a suit in equity in the District Court of Webster County, Iowa, to quiet its title to the lands, making the Des Moines Navigation and Railroad Company, Samuel G. Wolcott, William B. Welles, Roswell S. Burrows, Edwin C. Litchfield, William J. McAlpine, Richard B. Chapman, Albert H. Tracy, Francis W. Tracy, Harriet Tracy, Electus B. Litchfield, Edward Wade, John Stryker, the Des Moines Valley Railroad Company, Thomas Colter, Jacob Crouse, and John P. McDermott, defendants. In the bill it was alleged that the Homestead Company had been in possession of the lands since 1861, and that "they have paid taxes thereon to the State of Iowa since, . . . and if their title has failed they are entitled to have their taxes refunded since 1861 by the holder of the legal title, who has not paid them."

As to the defendants Wolcott, Welles, Burrows, Edwin C. Litchfield, McAlpine, Chapman, Albert H. Tracy, Francis W. Tracy, Harriet Tracy, Electus B. Litchfield, Wade, and Stryker,

it was alleged that they held title to certain parcels of the lands under the river grant. The defendants Colter, Crouse, and McDermott were alleged to be preëmption claimants. The Des Moines Navigation and Railroad Company was the corporation to which the State transferred the river grant, and from which the other defendants, who hold under that grant, got their respective titles. The Des Moines Valley Railroad Company was made a defendant because of its claim of title to lands involved in the suit but which did not pass to the Des Moines Navigation and Railroad Company under the river grant. The prayer of the bill as to the several claimants under the river grant was, that the Homestead Company might be quieted in its title, and "that, in the event of a decree that the plaintiff's present title, or any part of it, has failed, the Des Moines Navigation and Railroad Company and its assigns may be decreed to repay to the plaintiff all taxes which *he* has paid on said lands, and interest thereon."

Afterwards, on the 13th of October, 1868, Edwin C. Litchfield, Electus B. Litchfield, and John Stryker, three of the defendants, and citizens of New York, filed their petition for the removal of the suit. to the Circuit Court of the United States for the District of Iowa, under the act of March 2, ·1867 (14 Stat. 558, c. 196), on the ground of "prejudice or local influence." This petition was accepted by the state court and an order entered "that· this cause be transferred to the said Circuit Court . . . as to said defendants *in re.*" Under this order the petitioning parties entered a copy of the record in the Circuit Court on the 17th of March, 1869, and during the summer or fall of that year the defendants, the Des Moines Navigation and Railroad Company, the Tracys, the ·Litchfields, Wolcott, Chapman, McAlpine, Welles, Wade, and Stryker, all answered, setting up their titles under the river grant'to the specific tracts of land held by them respectively, and, as to the taxes paid by the Homestead Company, averring that they were paid "voluntarily, with a knowledge of all the facts, and that the complainant is not entitled to have the same or any part thereof refunded."

On the 13th of May, 1870, the following entry was made by the Circuit Court in the cause:

"The Iowa Homestead Company, Complainant,

*v.*

"The Des Moines Navigation & Railroad Company, Samuel G. Wolcott, Wm. B. Welles, Roswell S. Burrows, Edwin C. Litchfield, Wm. J. McAlpine, Richard B. Chapman, Albert H. Tracy, Francis W. Tracy, Harriet Tracy, Electus B. Litchfield, Edward Wade, John Stryker, et al., Defendants.

"This action was commenced in the District Court of Webster County, Iowa, at the October term of said District Court. The defendants, Edwin C. Litchfield, Electus B. Litchfield, and John Stryker, filed their affidavit, bond, and petition asking the removal of this action from said District Court to this court, under the provisions of the act of Congress approved March 2d, 1867, entitled 'An act to amend an act for the removal of causes in certain cases from the state courts,' approved July 27, 1866.

"And it appearing to said District Court that said Edwin C. Litchfield, Electus B. Litchfield, and John Stryker were non-residents of the State of Iowa and residents of the State of New York, and that their application for the removal of this cause to this court in all respects conformed to the requirements of said act of Congress, the said District Court, at the October term thereof, in the year 1868, made the usual order transferring and removing this cause to this court as to the defendants Edwin C. Litchfield, Electus B. Litchfield, and John Stryker, and this cause as to said defendants was removed to this court for trial.

"And it appearing that the defendants, Samuel G. Wolcott, Wm. B. Welles, Roswell S. Burrows, Wm. J. McAlpine, Richard B. Chapman, Albert H. Tracy, Francis W. Tracy, Harriet Tracy, and Edward Wade, are, each and every of them, non-residents of the State of Iowa and district of Iowa, and under the statute above referred to are also entitled to a removal of this cause from the state court, and that said defendants, with the express consent and approval of the plaintiff, have appeared and answered the bill herein, and asked to be made

parties defendant, and that their rights may be heard and determined in this court and on the trial of this action.

"And it further appearing to this court that the defendants so asking to be made parties defendant hold under the same title as the defendants Edwin C. Litchfield, Electus B. Litchfield, and John Stryker, and that their defence is in all respects identical, with the said plaintiff consenting, it is ordered that said Samuel G. Wolcott, Wm. B. Welles, Roswell S. Burrows, Wm. J. McAlpine, Richard B. Chapman, Albert H. Tracy, Francis W. Tracy, Harriet Tracy, and Edward Wade, and each and every of them, be made parties defendant herein; that the answer filed by said persons be taken and deemed their answer to the complainant's bill; and that by their appearance and answer herein the said persons be deemed and treated as defendants herein and their rights in the premises adjudicated in and by this court in this action."

Afterwards the case came to this court in due course on appeal, where, on the 28th of April, 1873, it was decided that the defendants holding under the river grant had the better title, and that the Homestead Company could not recover for the taxes because they were paid voluntarily, without any request from the owners of the land and with a full knowledge of all the facts. A decree was thereupon entered affirming a decree of the Circuit Court dismissing the bill. *Homestead Company* v. *Valley Railroad*, 17 Wall. 153.

The Dubuque and Sioux City Railroad Company assigned to Edward K. Goodnow, then in life, all its claims against the owners of the lands in dispute for taxes paid, and he, on the 26th of July, 1880, brought suits in the Circuit Court of Webster County, one against John Stryker, one against the executor of Edwin C. Litchfield, one against Richard B. Chapman, one against Grace H. Litchfield, and, on the 30th of June, 1881, another against the executor and grantees of William B. Welles, to recover from them respectively the amounts due for the taxes of 1861, 1862 and 1863, paid by the Railroad Company on their several tracts of land.

As defences to the actions each of the defendants set up in his answer:

1. That, as to the taxes of 1861 and 1862, the lands belonged at the time of the levies respectively to the United States; "that the title thereto was in the United States, and that said lands were not subject to taxation by Webster County for any purpose for said years, and that if any taxes were assessed and levied thereon for the years aforesaid the same were not a valid or binding lien upon said lands."

2. That Goodnow and his assignor were estopped by the decree in the suit of the Homestead Company against the Des Moines Navigation and Railroad Company and others from a recovery in this action, that suit having been brought, among other things, for the same taxes, and having been prosecuted under the advice and direction of the Dubuque and Sioux City Railroad Company before its assignment to Goodnow.

In the suits against Chapman, Welles, the executor of Edwin C. Litchfield, and Grace H. Litchfield, an additional defence was made, to wit, that the decision of this court, at December term, 1866, in the case of *Wolcott* v. *Des Moines Company*, 5 Wall. 681, was a final determination of the disputed questions as to the title and ownership of the lands above the Raccoon Fork in controversy between the Dubuque and Sioux City Railroad Company and the Des Moines Navigation and Railroad Company and its grantees under their respective claims, and that, as these suits were not brought within either five or six years after that decision, they were barred by the statute of limitations.

The Supreme Court of Iowa, on appeal from the decree of the Webster Circuit Court in each of the cases, overruled these defences, denied to the defendants the rights, privileges, and immunities by them respectively set up and claimed under the laws and authority of the United States, and gave judgment against them for the taxes sued for. To reverse those judgments these writs of error were brought. The cases are reported as *Goodnow* v. *Stryker*, 62 Iowa, 221; *Goodnow* v. *Chapman*, 64 Iowa, 602; *Goodnow* v. *Litchfield*, 67 Iowa, 691; *Goodnow* v. *Wells*, 67 Iowa, 654.

The Federal questions relied on in argument are:

1. That as the title to the lands remained in the United

States until March 2, 1861, and as by the act of March 3, 1845, c. 48, § 7, 5 Stat. 743, admitting Iowa into the Union as a State, it was provided that the State should not levy any tax on public lands within its limits " whilst the same remained the property of the United States," the taxes for the year 1861 were illegal and void, because levied in violation of that act of Congress.

2. That the decree in the case of *Homestead Company* v. *Valley Railroad* was in its legal effect a bar to the recovery in this action, and as the Supreme Court of the State decided otherwise it failed to give full faith and credit to the judicial proceedings of this court acting under the authority of the United States.

3. That the judgment of this court in the case of *Wolcott* v. *Des Moines Company* was a final determination on the 13th of May, 1867, against the right of the Dubuque and Sioux City Railroad Company to claim the lands on which the taxes were levied in these cases, and that the legal effect of that judgment was to bar the right of the railroad company, and Goodnow as its assignee, to recover in this action, because the action was not commenced within the time prescribed by the statute of limitations after the rendition of that judgment.

These will be considered in their order.

1. As to the taxes of 1861. It is not contended that these taxes were actually levied upon the lands until after the title had passed out of the United States; but the claim is, that, by the laws of Iowa in force at the time, "government lands entered or located, or lands purchased from the State, shall not be taxed for the year in which the entry, location, or purchase was made," and that, as these taxes were levied within the year after the title passed out of the United States, they were illegal.

Whether the lands were taxable within a year after the title passed out of the United States is not a Federal question. There was nothing in the act of Congress admitting Iowa into the Union, or in any other act of Congress to which our attention has been directed, which in any manner interfered with the power of the State to tax lands as soon as they ceased to

be the property of the United States. The only prohibition was against taxation whilst the United States were the owners. The Supreme Court of Iowa has decided that the statute of the State referred to does not apply to these cases, because these lands were neither " entered" nor " located " within the meaning of those terms as applied to the acquisition of lands from the government. Consequently there was nothing in the laws of Iowa to prevent the levy of the taxes for 1861 as soon ·as the resolution of March 2d, 1861, went into effect. *Goodnow* v. *Wells*, 67 Iowa, 654. This, it was said, is in accordance with previous cases bearing on the same question, among which *Stryker* v. *Polk County*, 22 Iowa, 131, and *Litchfield* v. *County of Hamilton*, 40 Iowa, 66, were referred to. With the correctness of this decision we have nothing to do. It relates only to the construction of a State statute which is in no way in conflict with the Constitution or any law of the United States. The judgment of the state court on that question is final, and not reviewable here.

. We are referred, however, to *Litchfield* v. *County of Hamilton*, 101 U. S. 781, as an authority to the contrary of this. That was a suit in equity brought by Edwin C. Litchfield against the County of Hamilton, in a court of the State, to restrain the collection of taxes for the years 1859, 1860, 1861, 1862, 1863, 1864, and 1865 on lands owned by him in that county, and held under a title similar to that in these cases. The Supreme Court of the State decided (*Litchfield* v. *County of Hamilton*, 40 Iowa, 66) that the taxes for all the years were collectible, and to reverse a decree to that effect the case was brought here upon a writ of error. It was submitted on printed arguments when it was reached in the regular call of the docket. A few days before this submission was made an appeal in the suit of *Edwin C. Litchfield* v. *County of Webster*, brought in the Circuit Court of the United States for the district of Iowa, to enjoin the collection of taxes levied by the county of Webster, for the same years, on lands similarly situated in that county, was submitted under Rule 20, and the two cases were before us for consideration at the same ⊁'me. We decided unanimously that the lands were not taxable for

the years 1859, 1860, and 1861, and the principal opinion was prepared in the case of Webster County, (101 U. S. 773,) which, being here on appeal from the Circuit Court, was open for consideration upon its merits, without any reference to the limitation of our authority for the review of the judgments of the courts of the States. There was no doubt of our jurisdiction in that case to decide as to the taxes of 1861, and in doing so we held that, as under the statute of Iowa government lands could not be taxed during the year they were entered or located, these lands were exempt for that year. The case of Hamilton County involved precisely the same questions in the state courts as did that of Webster County in the Circuit Court. The two cases were argued here substantially in the same way, and in that of Hamilton County our attention was not specially directed to any difference in the Federal question presented by the tax for 1861 from that involved in the taxes for 1859 and 1860. The ground of decision in the court below was the same for all the years, and, without noticing the distinction which is now made as to our right to decide in that case upon the validity of the tax of 1861, we allowed the judgment to follow that in the case of Webster County, the two cases being exactly the same on their merits. It now appears we were in error in taking jurisdiction and reversing the judgment in the Hamilton County case for the tax of 1861. The Supreme Court of the State has also decided in the case of *Goodnow* v. *Wells, ubi supra*, that we erred in the decision of the question involved in the tax of 1861 on its merits, because we held that lands acquired from the United States by the title which was then and now under consideration came within the statutory exemption from taxation in the State for one year after the United States ceased to be the owners, having been misled, as is supposed, by an incorrect statement of the law in *McGregor, &c., Railroad Co.* v. *Brown*, 39 Iowa, 655, to the effect that "government lands are not taxable until a year after they are patented." We may remark also, that, in our opinion, the conclusion then reached by us received further support from the cases of the *Iowa Falls and Sioux City Railway* v. *Chero-*

*lee County*, 37 Iowa, 483; *Goodrich* v. *Beaman*, 37 Iowa, 563; and *Iowa Falls and Sioux City Railway* v. *Woodbury County*, 38 Iowa, 498. But whether we were right then on this question or not, it is unnecessary now to consider, as upon the present record we are clearly of opinion that the decision of the court below, to the effect that the lands were taxable for the year 1861, is not reviewable here. That question is one on which the decision of the highest court of the State is conclusive.

2. As to the estoppel by the decree in the case of the *Homestead Company* v. *Valley Railroad*.

That suit did not embrace the taxes for the years 1861, 1862, and 1863 paid by the Dubuque and Sioux City Railroad Company. The Homestead Company did not acquire title to the lands until November 12, 1863, and it only paid the taxes for 1864 and thereafter. The conveyance by the Railroad Company to the Homestead Company did not profess to transfer the claim of the Railroad Company against the holders of the river grant title for taxes paid or to be paid. The suit of the Homestead Company was for the land, or the taxes *it* had paid. There was no reference in the pleadings to taxes paid by the Railroad Company, and no claim was made for anything except the payments by the Homestead Company itself. The Homestead Company did not profess to sue as trustee for the Railroad Company. It is true that the Railroad Company, as warrantor of the title of the Homestead Company, aided in the prosecution of that suit, and that the decree may be conclusive evidence of a failure of title in a suit brought by the Homestead Company against the Railroad Company to recover damages for a breach of the covenants of warranty in the deed for the lands; but as the taxes paid by the Railroad Company were in no way involved in the suit, neither the Railroad Company nor the defendants in that suit were concluded as to them by anything contained in the decree. The decision may be referred to as a judicial precedent for holding that taxes paid under the circumstances in which these were paid could not be recovered by the party paying them from the true owners of the land; but it is in no sense a

judgment in a suit between the same parties upon the same cause of action as is here involved, and therefore a bar to the recovery in these cases. In our opinion the court below did not fail in its decision to give full faith and credit to that decree.

3. As to the effect of the judgment in *Wolcott* v. *Des Moines Company* upon the operation of the statute of limitations in these cases.

That was a suit between a purchaser of a single half section of the river lands above the Raccoon Fork against his vendor, the Des Moines Navigation and Railroad Company, to recover damages for a breach of the covenants of warranty in the deed of conveyance to him. There was no party to the suit except Wolcott and the Navigation Company. Wolcott claimed nothing under the railroad grant or under the Railroad Company. It is true that the ground of his action was the superior title of the Railroad Company as against that of the Navigation Company at the time of the conveyance of the latter company to himself, but he was neither suing for the Railroad Company nor representing it in the action, so far as anything appears in these records or in that. His suit was nothing more or less than to recover damages from the Navigation Company for a breach of covenants of warranty with himself, in which neither the Railroad Company nor any one claiming under it had any interest. The judgment in the action was conclusive as between him and the Navigation Company upon the cause of action involved, but as to no one else. It settled no title between the Navigation Company or its grantees and the Railroad Company or those claiming under that company. That decision is indeed referred to in the case of *Homestead Company* v. *Valley Railroad*, *ubi supra*, as "settling" "the question of title to the Des Moines River lands," but that was only in the way of judicial authority as a precedent, and not as an estoppel. The legal operation and effect of the judgment as an estoppel was confined to the title of the parties in that suit to the particular half section of land then in controversy. As to any other tract of the river lands and as to any other parties, it stood, in the language of Mr. Justice Miller in *Williams*

v. *Baker*, 17 Wall. 144, only as "an authoritative exposition" of the views of the court on a question which "was argued fully by parties deeply interested on both sides" and which "received attentive consideration," and was, therefore, "entitled to the same weight as other well-considered cases." The judgment can be referred to by the parties to this suit as a precedent, but not as an estoppel.

We have not overlooked the fact that a brief was filed at the hearing in this court on behalf of the Railroad Company to support the claim of Wolcott that the title of that company was the best. Such a proceeding did not make the Railroad Company a party to the suit, or bind it by the decree. Being interested in the question to be decided, the company was anxious to secure a judgment that could not be used as a precedent against its own claims in any litigation that might thereafter arise in respect to its own property. It is not an uncommon thing in this court to allow briefs to be presented by or on behalf of persons who are not parties to the suit, but who are interested in the questions to be decided, and it has never been supposed that the judgment in such a case would estop the intervenor in a suit of his own which presented the same questions. It could be used as a precedent, but not as an estoppel in the second suit.

We find no error in the decisions of the Supreme Court of Iowa upon any of the Federal questions involved in these cases, and each of the judgments is consequently

*Affirmed.*