J. W. Bishop, Appellant, v. The County of O'Brien et al., Appellees.

Taxation:   EXEMPTION.   A good faith purchaser of land from a railway company which had then earned its right to a patent from the government, though unissued, and who went into possession under his deed from the company, retaining the uninterrupted enjoyment of the premises, and whose rights were never endangered by the government, except that proof of such equitable right was required when patent issued direct to him without expense, can not be heard to question his own title for the purpose of avoiding taxation, although all right of the railway company was annulled by legislation and judicial procedure to which he was not a party.

*Appeal from O'Brien District Court.*—Hon. F. R. Gaynor, Judge.

Monday, November 22, 1909.

THIS is a suit to cancel and abate certain taxes assessed against plaintiff's lands, and to remove the cloud thereof. There was a decree in the trial court dismissing the petition and plaintiff appeals. *Affirmed.*

*W. P. Briggs,* for appellant.

*W. D. Boies* and *R. J. Locke,* County Attorney, for appellees.

EVANS, C. J.—Plaintiff is the owner of the southeast one-fourth of section 29, township 97, range 42, in O'Brien County. He purchased said land originally in 1882 from the Sioux City Railway Company, and has been in the possession and enjoyment of the same ever since. The land was included within a certain land grant acquired by the railway company under Act Cong. May 12, 1864, 13 Stat. 72, C. 84, conditioned upon its building to completion a certain ten mile section of railroad. The conditions were fully complied with by the railway company in 1872, and the land in question was duly selected by it and was duly certified and approved by the government officials. The railway company was entitled to the issuance of a patent at that time if it had applied for the same. The land, however, with other lands, was included within the "overlapping limits" of two grants, and litigation resulted between the Sioux City Railway Company, and another railway company, known in this record as the "Milwaukee Company." The plaintiff, however, held his title by a warranty deed from the Sioux City Company, and by a quitclaim deed from the Milwaukee Company. The result of the litigation between the two companies was that this land was awarded to the Sioux City Company. This result, however, was not reached for many years, and because thereof no patent was issued. In the meantime other lands were, from time to time, patented to the Sioux City Company,

until it had obtained several thousand acres in excess of that which it had earned. In 1889 an action was brought against the railway company by the Attorney General of the United States in pursuance of an. Act of Congress, dated March 3, 1887, to recover from the railway company the excess of land so patented to it, and to cancel its right to demand further patents for lands even though previously earned. This litigation went to a final decree in 1895, and this decree awarded to the government the relief prayed. It was adjudged by this decree that the Sioux City Railway Company was not entitled to any further patents even of lands previously certified and proved. This included the land involved in this case. Thereupon, in pursuance of section 4 of such Act of 1887, the plaintiff, as a good-faith purchaser from the Sioux City Railway Company, procured title from the government; the final proceedings being had in January, 1900. The plaintiff had paid the taxes upon his land every year up to and including the year 1894. Taxes were levied annually thereon for the years 1895, 1896, 1897, 1898, and 1899; but they were not paid.

The plaintiff contends that he is not liable for the taxes for these years in question, because the ownership of the land during that period was in the United States as a part of the public domain. These are the taxes which he asks to abate. The plaintiff was not a party to the action between the United States and the Sioux City Company. He claims, however, that he acquiesced in the decree, and was therefore bound by it. In order to obtain his title from the government, the plaintiff passed through a regular form of procedure prescribed by the rules of the Land Office. In form, at least, the land was thrown open to entry, reserving to the plaintiff the right to purchase the same at the government price upon proof that he was a good-faith purchaser. Several homestead entries were made thereon, and the claimants contested with the plain-

tiff before the Land Department. The argument of plaintiff is now that he stood before that tribunal as any other claimant, and that the land was not his until it was finally awarded to him. If we should look alone to the method of procedure adopted by the Land Department for the determination of plaintiff's right, there would be much plausibility in plaintiff's argument in a technically legal sense. We think, however, that the plaintiff's right to this land as a good-faith purchaser was fully protected by Congress by the Act of 1887. This was the same enactment which authorized the Attorney General to bring the suit in question against the Sioux City Company. Section 4 of such Act is as follows:

That as to all lands, except those mentioned in the foregoing section, which have been so erroneously certified or patented as aforesaid, and which have been sold by the grantee company to citizens of the United States, or to persons who have declared their intention to become such citizens, the person or persons so purchasing in good faith, his heirs or assigns, shall be entitled to the land so purchased upon making proof of the fact of such purchase at the proper land offices within such time and under such rules as may be prescribed by the Secretary of the Interior after the grants respectively shall have been adjusted, and patents from the United States shall issue therefor, and shall relate back to the date of the original certification or patenting.

Even though it should be conceded that the United States Government had the power to retake the land in question from a good-faith purchaser, Congress recognized the fact that it would be inequitable to do so, and refused to exercise the power. The 1895 decree, which took the land from the Sioux City Company, did not purport to deprive a good-faith purchaser of any equitable right acquired by him. The land was very valuable at this time, and contained valuable improvements put there by plaintiff. By the provisions of this Act of 1887, the good-

faith purchaser was protected to the extent that his title
would be perfected by a patent from the government with-
out charge to him.  The government was required by this
Act of Congress to look to the Sioux City Company alone
for the payment of the government price of the land.
Even a failure of the Sioux City Company to pay would
not, under this Act, render a good-faith purchaser liable
to the government for such payment.  The patent was in
fact finally issued to the plaintiff without price.  The only
condition imposed · upon the plaintiff under this statute
was that he should make proof before the Land Office that
he was a purchaser in good faith.  If in fact the Land
Office put him under a greater burden of formality than
was required by this section of the Act, it could not thereby
change his rights, nor subject his title to any greater
menace than was involved in the terms of the Act itself.
We think, therefore, that the plaintiff was at all times
fully protected in his title by the Act of 1887, and ,that
by such Act the government constituted itself a trustee of
the legal title for his benefit.  It performed its trust and
conveyed to him the title "without money and without
price," and he is in no position now to impeach his own
title for the mere purpose of avoiding taxes.  His claim
has in it no element of equity as distinguished from tech-
nical legal right.  As bearing somewhat upon the ques-
tion, see:  *Davis v. McGoun,* 109 Iowa, 309; *Herrick v.
Sargent,* 140 Iowa, 590; *Hussman v. Durham,* 165 U. S.
144 (17 Sup. Ct. 253, 41 L. Ed. 664); *Witherspoon v.
Duncan,* 71 U. S. 210 (18 L. Ed. 339); *Stryker v. Polk
Co.,* 22 Iowa, 131; *Litchfield v. Hamilton Co.,* 40 Iowa, 66.

Under the facts as stipulated in this record, the Sioux
City Railway Company had performed every condition
necessary to entitle it to demand a patent for the land in
question before it conveyed it to the plaintiff.  In that
sense, at least, it had earned the right to a patent for this
land.  It lost such right by reason of conditions arising as

between it and the government, after the plaintiff had become a good-faith purchaser. It is urged by the defendant that the case is controlled by chapter 28, Acts 20th General Assembly, 1884, which is as follows: "All lands lying within the State of Iowa, which have been heretofore granted or may be hereafter granted to any railroad company, or corporation, by the general government, or by the general government to the State of Iowa, and by the state granted to any such railroad company or corporation, shall be subject to assessment and taxation within the counties where situated from and after the same may be earned, to the same extent as though patents had been issued to, and the title of record was in such railroad companies or corporations." The effect to be given to this legislative Act is discussed in *Chicago, M. & St. P. R. R. v. Hemenway*, 117 Iowa, 598. Whether this statute would of itself be determinative of this case we have no occasion now to determine. What we do hold is that at the time plaintiff purchased from the railway company, his grantor then had the right to demand a patent, and that the plaintiff has been the equitable owner of it ever since, and that his enjoyment thereof and profit therefrom have never been interrupted, and that his equitable rights were never endangered by the government in any other sense than that proof of such equitable rights was required. Such proof being disclosed, the government expressly recognized his equitable ownership and deemed itself as his trustee from the beginning. The Act of 1887 provided not only that the government should convey to the plaintiff the legal title, but that such legal title should be deemed to relate back so as to give recognition to the plaintiff's title from its inception. There is a sense in which it may be said that this Act surrendered the land to the plaintiff and surrendered the plaintiff to the operation of the Iowa statute. It offered no menace to his title,

nor did it furnish him asylum against taxation by the state.

A court of equity will not strain a point to find a temporary technical failure of his title in order to relieve him of equitable taxation. If it were true, as he claims, that he obtained his title, not by his own right, but by grace of the government, such a recipient ought to be willing to repay "grace for grace," and to bear cheerfully his proportionate share of the burdens of a gracious government.

We think the decree entered below was right, and it is, accordingly, *affirmed.*

LADD, J., took no part.