[No. 10269.  Department One.  June 17, 1912.]

THE STATE OF WASHINGTON, *Respondent*, v. G. G. GAMBER, *Appellant*, HERBERT MATSON, *Defendant*.[1]

ROBBERY—EVIDENCE—SUFFICIENCY.  A conviction of robbery is not sustained where there was no evidence that the defendant participated in the crime or aided or abetted therein or in a conspiracy to commit it, other than the fact that he joined the others a short time previously and said "get him" when the victim started to run away.

DUNBAR, C. J., dissents.

Appeal from a judgment of the superior court for King county, Gay, J., entered January 20, 1912, upon a trial and conviction of robbery.  Reversed.

*John W. Whitham*, for appellant.

*John F. Murphy, Crawford E. White,* and *Reah M. Whitehead*, for respondent.

GOSE, J.—The defendants were jointly charged, tried, and convicted of the crime of robbery.  The defendant Gamber has appealed.

At the close of the state's case, the appellant moved for a directed verdict.  The denial of this motion constitutes the principal assignment of error.  The state's case shows that the complaining witness, Wolfe, was drinking in a saloon on Yesler way, in the city of Seattle, at about eight o'clock on the evening of the robbery; that he then exhibited a considerable sum of money; that the defendant Matson was then in the saloon, but not drinking with Wolfe; that the appellant was not in the saloon; that Wolfe left the saloon in a drunken condition, between 8 and 8:30 p. m.; that Matson left a few minutes later, and joined Wolfe on First avenue, about two blocks north of Yesler way; that they traveled north on First avenue about ten blocks, when they were

[1]Reported in 124 Pac. 210.

joined by the appellant; that Matson had arranged to take Wolfe to Fourth and Pike streets, and that the three continued to travel north a distance of ten or twelve blocks, when Wolfe was knocked down and robbed.

Wolfe testified that Matson came up to him and said, "Where you going, kid?" that he answered that he was going to Fourth and Pike streets; that Matson said, "I am going up that way. I will show you the place;" that he— Wolfe—was unacquainted with the city, but that he could get his bearing at that point. The state's evidence further shows that Wolfe was not acquainted with either of the defendants; that the appellant did not strike or touch Wolfe, but that the latter was assaulted and knocked down by Matson. Wolfe further testified that he finally realized that he was "in a strange part of town;" that he knew his money was not safe; that he turned to leave the defendants; that the appellant then said, "Get him;" that he then started to run and to call for help; that when he had run about a half block, Matson overtook him, struck him, and knocked him down. A Mr. Rudd, a policeman, testified that he heard the call for help and hastened to the scene; that, when he reached there, he found six or eight people, including both defendants; that Matson "was all over mud;" that he asked Wolfe where he had been robbed, and that he answered, "Over there;" that the appellant then said that Wolfe had been robbed in the alley, and that they went to the alley, and some one (he did not remember who) picked up $100 in twenty-dollar gold pieces and gave to the witness. Later in the evening Matson was arrested, and two muddy twenty-dollar gold pieces were found secreted in his sock. Wolfe further testified that he met the appellant the next day, and that the latter said to him, "You got pretty badly beaten up, didn't you?" that he said, "Yes," and that the appellant then said that he did not rob him; that he had plenty of money and did not have to steal; that the witness asked the appellant if he would know Matson; that he answered, "Yes;"

that witness then said he would like to have an opportunity to talk with him, and that the appellant then said, "Wait until I have a shave and a shine, and I will take you to where he hangs out and talk to him;" and that the witness then got an officer and had the appellant arrested.

It will be observed that there is no testimony tending to show that the appellant aided in or abetted the robbery. If the conviction is permitted to stand, it must rest upon a conspiracy between the defendants to commit the crime. Of this there is no evidence. The appellant joined the complaining witness and Matson on First avenue, about 8:30 in the evening, at about the intersection of First avenue and Pike street. There is no evidence that this meeting was the result of a preconcerted plan between the defendants. Indeed, the inference is clear that it was not. Matson was then proceeding with Wolfe to the point where the latter desired to be taken. There is no evidence that the appellant knew that Wolfe had money on his person. If the appellant had conspired with Matson to decoy the complaining witness to a secluded place and there rob him, he would no doubt have joined in the robbery. The appellant knew Matson, but there is no evidence that they were intimates, or indeed that they had ever been seen together. They are all young men, and the mere fact that the appellant joined them, walked with them, and said "Get him," is not sufficient to support a judgment of conviction. It shows neither an aiding and abetting nor a conspiracy. The appellant took the witness stand and denied that he said anything, except to point out to the policeman the place where the trouble began. In view of the fact that no money was found upon the appellant, that he did not participate in the commission of the crime, and that there is nothing in the record which reaches the dignity of evidence tending to show a common criminal design or conspiracy between the defendants, the conviction cannot be permitted to stand. While we adhere to the rule, so often announced by this court, that the jury are the

exclusive judges of the facts, there must be some evidence to support a conviction. We are always reluctant to disturb the verdict of a jury, but we feel that we would be recreant to duty if we permitted a judgment of conviction to rest upon such a fragment of evidence. It is important to the state that the guilty be punished, but it is more important that a citizen be not deprived of his liberty unless there be some evidence to justify it. We find no such evidence in the record. The motion for a directed verdict should have been sustained.

The judgment is reversed, with directions to dismiss the case.

PARKER, CROW, and CHADWICK, JJ., concur.

DUNBAR, C. J., dissents.