[S. F. No. 11978. In Bank.—December 30, 1926.]

FRANK P. DOYLE et al., Petitioners, v. FRANK C. JORDAN, as Secretary of State, etc., Respondent.

[1] BRIDGE AND HIGHWAY DISTRICTS — PETITION FOR ORGANIZATION — WITHDRAWAL OF SIGNATURES.—Under the act of 1923 (Stats. 1923, p. 452), as amended in 1925 (Stats. 1925, p. 714), for the incorporation and management of bridge and highway districts, signers of the petition for the formation of such a district cannot legally withdraw their names from such petition after the same has been certified as sufficient by the county clerk of the county in which it was circulated and presented to and filed with the Secretary of State as provided by said act.

[2] ID. — INTENTION TO JOIN DISTRICT — ORDINANCE OF SUPERVISORS — ATTEMPTED REPEAL.—Where the board of supervisors of a county has passed an ordinance to the effect that the county intends to unite with such other counties as may adopt like ordinances to form a bridge and highway district under the act of 1923, and amendment thereto, and the petition provided for by said ordinance has been circulated, signed, certified, and presented to the Secretary of State, it is too late for said board to repeal said ordinance, as the powers granted it under the statute were exhausted by passing the first mentioned ordinance.

[3] ID. — OFFER TO JOIN DISTRICT — ATTEMPTED WITHDRAWAL — CONSTRUCTION.—There is no merit in the contention that the passage by a board of supervisors of an ordinance, under said act, declaring it to be the intention of the county to join a bridge and highway district is but an offer or proposal on the part of the county and that it may be withdrawn or revoked at any time before its acceptance.

[4] ID.—OFFER—ACCEPTANCE.—Conceding that an ordinance passed by a board of supervisors declaring it to be the intention of the county to join with other counties in the formation of a bridge and highway district to be an offer or proposal only, where it was made in accordance with the statute and made "to unite with such other counties as may adopt like ordinance," and other counties adopted like ordinances and following the passage of said ordinance took all proceedings required of them by said statute in order to join said bridge and highway district, the offer made by the first county was accepted by the other counties and an

1. Right to withdraw names from petition, notes, 11 L. R. A. (N. S.) 372; 35 L. R. A. (N. S.) 1113.

attempt of the board of supervisors of the first county to withdraw therefrom was too late and accordingly ineffectual.

[5] ID.—ACCEPTANCE OF OFFER BY OTHER COUNTIES—NUMBER.—Where it was the clear intention of a board of supervisors to adopt an ordinance in compliance .with the terms of the statute to unite with such other counties as might adopt like ordinances for the formation of a bridge and highway district, it was not impossible to accept said offer so long as any one or more other counties passed a similar ordinance, and the passage of such ordinance by any of said other counties was of itself an acceptance of the offer of the first county to join in the district.

[6] ID.—DESCRIPTION OF PROJECT.—Although a description of the project for which it is proposed to form a bridge and highway district is not set forth nor mentioned in either the ordinance passed by the boards of supervisors or in the petition circulated and signed by the electors, where there is officially of record in each of the counties of the district a document among the proceedings to incorporate the district in which the object and purpose or the project for which said district is to be formed is definitely and distinctly set forth, this sufficiently complies with the statute.

[7] ID. — CONSTITUTIONALITY OF STATUTE — DUE PROCESS — TAKING OF PRIVATE PROPERTY — TITLE OF STATUTE. — The contention that the act for the incorporation of bridge and highway districts is unconstitutional because it seeks to deprive persons of their property without due process of law and to take private property for private uses, and that more than one subject is embraced within the title of the statute, cannot be maintained.

[8] ID.—BOARD OF DIRECTORS OF DISTRICT—LEVYING TAXES—CONSTITUTIONAL LAW.—Even if an attempt to clothe the directors of a bridge and highway district with power to levy taxes is beyond the constitutional authority of the legislature, this question cannot be raised in a proceeding instituted for the sole purpose of testing the validity of those provisions of the act providing for the incorporation and formation of the district, as the district when incorporated may be a valid and constitutional agency of the state, although some of the powers with which the legislature may have sought to invest the directors thereof are invalid and unconstitutional, which defects may be cured by further legislation.

[9] ID.—EQUALIZATION OF ASSESSMENTS.—The objection that the act for the organization of bridge and highway districts is unconstitutional in that it contains no provision for the equalization of the assessments of property in the different counties embraced in . the district cannot be maintained in a proceeding for the sole purpose of testing the validity of the provision of the act for the incorporation and formation of such a district.

[10] ID. — CONSTITUTIONAL LAW — ARTICLE XI, SECTION 13, CONSTITU-
    TION.—The act for the incorporation and management of bridge
    and highway districts does not violate article XI, section 13, of the
    constitution.

(1) 29 C. J., p. 557, n. 20 New. (2) 29 C. J., p. 556, n. 84.
(3) 29 C. J., p. 556, n. 84. (4) 29 C. J., p. 556, n. 84. (5) 29 C. J.,
p. 556, n. 84. (6) 29 C. J., p. 556, n. 6. (7) 29 C. J., p. 554, n. 72.
(8) 29 C. J., p. 555, n. 73 (9) 29 C. J., p. 555, n. 73 New. (10) 29
C. J., p. 554, n. 72.

APPLICATION for a Writ of Mandate to require the Secretary of State to publish certain notices under the statute for the incorporation and management of bridge and highway districts. Writ granted.

The facts are stated in the opinion of the court.

Frank L. Coombs, Nathan Coombs and George H. Harlan for Petitioners.

U. S. Webb, Attorney-General, and Robert W. Harrison, Chief Deputy Attorney-General, for Respondent.

Charles A. Strong, Charles M. Mannon and Caspar A. Ornbaum, *Amici Curiae.*

CURTIS, J.—The petitioners herein by this proceeding seek from this court a writ of mandate directed to the respondent, the Secretary of State, commanding him as such public officer to publish certain notices which petitioners claim respondent is by law required to publish by virtue of certain proceedings set forth in the petition herein, which proceedings were taken under the authority of, and in compliance with, the provisions of a certain act of the legislature providing for the incorporation, organization, and management of bridge and highway districts. Said act is entitled: "An act to provide for the incorporation and management of bridge and highway districts and to provide for the acquisition and construction by said districts of highways, bridges and approaches thereto, and for the acquisition of all property necessary therefor, and also to provide for the issuance and payment of bonds by said districts, for the levying of taxes and the collection of tolls by said districts

and for the annexation of additional territory thereto''
[Stats. 1923, p. 452]. This act was amended in some of its
essential features by an act of the legislature in 1925 [Stats.
1925, p. 714]. Sections 1 and 2 and a portion of section 3 of
said act are as follows:

"Section 1. A bridge and highway district may be organized and incorporated and managed as herein expressly provided, and may exercise the powers herein expressly granted or necessarily implied. The word 'county' as used herein shall include county, and city and county.

"Sec. 2. A bridge and highway district may be organized consisting of one or more counties or parts of a county or counties, and including a city and county, under the provisions of this act, by proceeding as follows: The several boards of supervisors of said counties or parts of counties, may adopt an ordinance to the effect that the county, or part of county, intends to unite with such other counties as may adopt like ordinances to form such district, or such ordinance may, in one or more of said counties, be adopted by the electors of the county under the provisions of the law applicable to the passage of ordinances by the initiative. Each of said counties shall be contiguous to another county therein; *provided,* that counties separated by any of the waters of this state are contiguous within the meaning of this act. In such ordinance it shall be directed that a petition be circulated therefor, and the board shall, by resolution, name and appoint persons to circulate and secure signatures for the same.

"Sec. 3. Such petition which may consist of any number of separate instruments shall be presented to the secretary of state, signed by qualified electors, residing within the boundaries of the proposed bridge and highway district, equal in number to at least ten per centum of the number of such qualified electors in each county from which such petitions are presented voting for governor of this state at the last general election prior to the presentation of such petition. The board of supervisors of any county may, in lieu of proceeding by petition, call an election, as provided for the calling of special elections under the laws pertaining thereto, to be held in conformity therewith, where and when the same may be determined by a majority vote of the electors voting thereat.

"Such petition shall set forth the extent of the district, either by describing its exterior boundaries, or by naming the counties proposed to be included therein, as having been determined by said ordinance and in case only part of any county is proposed to be included therein, the extent of the part of the county included may be indicated by naming the county and excepting therefrom, some administrative or governmental subdivision or subdivisions thereof, such as townships, school districts or other similar subdivisions, or such excluded portion may be described by its boundaries, and in any of said descriptions of included or excluded territory, reference to recorded instruments may be made for the purpose of defining such boundaries, and shall contain a prayer that such proposed bridge and highway district be incorporated under the provisions of this act. Attached to each of the petitions shall be a copy of said ordinance. The said ordinance may be enacted by the board of supervisors at any time after application shall be made to them for such purpose, but in case such board shall neglect to act upon such application for a period of sixty days thereafter, the said ordinance may be submitted to the electors of such county or city and county under the provisions of the initiative applicable thereto. In case said ordinance shall be passed by the board of supervisors, it shall be subject to the referendum provisions applicable to ordinances generally in such county or city and county. The said petitions from any county shall be grouped or fastened together and shall contain a certificate of the county clerk of such county that the same contains the requisite number of qualified signatures of qualified electors. The said county clerk shall have ten days time for the examination of such petitions when left with him for verification and it shall be his duty to verify the same, attach his certificate thereto within said period of time and forward the same to the secretary of state with his certificate that the same is sufficient and if from such examination he shall find that said petition is not signed by the requisite number of qualified electors residing within· his county he shall also certify to the number of qualified electors required to make such petition sufficient, and it may be amended by filing a supplemental petition or petitions within twenty days from the date of such certificate, either by the same persons theretofore appointed to secure signatures,

or by other persons appointed by the board of supervisors for that purpose. The county clerk shall within ten days after the filing of such supplemental petition or petitions make like examination of the same and certify to the result of such examination as hereinabove provided. If his certificate shall show any such petition or said petition as amended to be insufficient it shall be filed by him with the secretary of state and kept by him as a public record without prejudice however to the filing of a new petition to the same effect, but if, by the certificate of the county clerk such petition or said petition as amended is shown to be sufficient the county clerk shall present the same to the secretary of state without delay. If any supplemental petition be filed all of the signatures appended to the petition or to the supplemental petition or petitions shall be considered in determining the number of qualified electors signing the petition. In case an election is had in any county in the place of said petition, the county clerk shall certify to the secretary of state the result thereof, with a copy of the action of the board of supervisors authorizing said election.

"After the certificate is issued by the secretary of state for the incorporation of such proposed bridge and highway district, the sufficiency of such petition in any respect shall not be subject to judicial review or be otherwise questioned. If any county within the boundaries of such proposed bridge and highway district shall have a registrar of voters other than the county clerk the said registrar of voters shall perform the duties herein required to be performed by the county clerk respecting the examination, certification and filing of the petition, and said registrar of voters shall return said petition immediately upon the completion of such examination, together with his certificate showing the result of such examination to the secretary of state. When all said petitions, or certifications of the result of elections when such elections are held, have been received from the several county clerks of counties having any portion of their territory within said proposed bridge and highway district the said secretary of state shall publish the text of such petition for at least three weeks before the time set by him as the time up to which protests may be received as hereinafter provided in at least one and not to exceed three newspapers printed and published in each of the counties from which such petitions

have been presented, together with a notice stating the time which he has fixed up to which protests will be received against the inclusion of property within such proposed bridge and highway district. The names attached to said petition need not be published therewith, nor the certificates of any of the county clerks or registrars of voters, but it shall be sufficient to state that the same has been signed by a certain number of electors, naming it, and duly verified by such county clerks or registrars of voters.

"At any time before the time set by the secretary of state up to which protests may be received, any owner of property subject to taxation within said proposed bridge and highway district, may file, with the secretary of state, his protest in writing against the formation of such district, and stating therein such grounds as he may have for claiming that his said property, or any portion thereof, will not be benefited by the formation of the proposed bridge and highway district. The said protest shall contain the name and address of the person protesting and the name and address of his attorney, if he has one, and all of the protests so received by the secretary of state shall, with the petition filed from the county, be forwarded by the secretary of state to the superior courts in the respective counties from which the same have been received by the secretary of state, and thereupon the said superior courts shall acquire jurisdiction to hear and determine the said protests so received from the owners of lands located within their respective counties. It shall be the duty of the clerk of said superior courts to set the said matters for hearing before said court, and to give ten days' notice thereof in writing to the protestants, and to any person who shall have filed with the secretary of state his name and address as the attorney for the petitioners in said petition, which said attorneys' names and addresses shall also be certified from the office of the secretary of state to the respective county clerks at the time of the transmission of the petitions thereto. At the time specified in such notice, or at such other time to which the said hearing may be continued, the said superior courts shall have jurisdiction to hear and determine all matters urged by the protestants against the formation of the said proposed bridge and highway district, or against the inclusion of their lands therein, and the said superior courts shall have jurisdiction to exclude

the said lands from said proposed district, together with any other lands contiguous to the excluded lands, and contiguous to the exterior boundaries of the proposed district which are similarly situated to the lands of the protestants, to the end that isolated tracts may not be excluded from the district without also rectifying the boundaries thereof so that the district when finally formed shall be compact, continuous and without tracts of land excluded therefrom which are totally surrounded by other lands which are left within the district.

"The judgment of the superior courts, when given shall be certified by the clerk to the secretary of state, together with the original petitions and protests theretofore transmitted to him by the secretary of state, and the said judgment shall not be appealable, and all questions of fact therein contained shall be final and conclusive upon the whole world, and shall only be subject to review by the supreme court of this state, upon a writ of review issued out of that court in such cases as writs of review are now permissible against superior courts, or the irregular exercise of the jurisdiction of such courts. Such proceedings for a writ or review must be taken within ten days after the entry of the judgment in the superior courts, and if not so taken all judgments of the superior courts shall become final.

"When all of the protests have been disposed of as hereinabove provided, and the results of the judgments therein certified to the secretary of state, the secretary of state shall thereupon issue his certificate of incorporation declaring the said district with the boundaries as finally established to be duly incorporated, formed and organized and shall file the same in his office, and cause a certified copy thereof to be recorded in the office of the county recorders of each of the counties situated within or partially within said proposed bridge and highway district."

By an amendment to the statute in 1925 it was provided that:

"In case the board of supervisors of any county named in the petitions from other counties engaged in the formation of a bridge and highway district shall fail or neglect for sixty days after the application submitted to them, to pass such ordinance, and a period of more than sixty days thereafter shall elapse without any proceeding for passing such ordinance under the provisions of law relating to the in-

200 Cal.—12

itiative being on file with the county clerk or registrar of voters, the latter must upon receipt of an affidavit of an elector of the county, setting forth the date of making the original application to the board of supervisors and the failure of such board to act thereon for sixty days thereafter, issue his certificate to the secretary of state attached to such affidavit certifying that on the date of the issuing thereof no proceedings have been filed in his office to submit such ordinance to the electors under the provisions applicable to the initiative, and must forthwith transmit such certificate and affidavit to the secretary of state° and the latter shall file the same, and the county from which such affidavit and certificate have been received by the secretary of state shall be excluded by him from the proposed district in the same manner as if the same had been excluded by order of the superior court. . . . ''

The act further provides, after the Secretary of State has issued his certificate of incorporation, for the appointment by the boards of supervisors of the respective counties comprising the district of directors to conduct and manage the affairs of the district, defines the powers of such board of directors and provides for the incurring of a bonded indebtedness upon a two-thirds vote of the electors of the district whenever the board of directors deem it necessary.

The amended petition herein alleges that written applications were presented to the board of supervisors of the counties of Del Norte, Humboldt, Mendocino, Lake, Sonoma, Napa, and Marin and of the city and county of San Francisco to pass an ordinance as in said act provided, declaring it to be the intention of such counties and of such city and county to form a bridge and highway district to be known as the Golden Gate Bridge and Highway District; that such ordinances were passed by the board of supervisors of the city and county of San Francisco and of the counties of Del Norte, Mendocino, Sonoma, Napa, and Marin; that thereafter and in each of said last-named counties and in the city and county of San Francisco petitions were circulated identical in form and in all respects as required by said act and praying that said Golden Gate Bridge and Highway District be formed under the provisions of said act of the legislature; that each of said petitions was signed by more than ten per cent of the votes cast in said respective counties and in said

city and county for Governor at the last general election immediately preceding the time when said petitions were circulated; that said petitions with the signatures attached to each thereof were left with the county clerks of said respective counties and with the registrar of voters of the city and county of San Francisco and were by said last-named officers certified to be sufficient and were thereafter transmitted to the respondent as Secretary of State; that there was also filed with the Secretary of State certificates and affidavits as required by said act from the county clerks of Humboldt and Lake Counties setting forth that no ordinances had been passed as required by said act in said county of Humboldt or in said county of Lake within sixty days after the filing of the application therefor, and that no proceedings for the passage of an ordinance under the provisions of law relating to the initiative were on file with the county clerk of either of said counties. Said amended petition further alleges that said respondent has failed, neglected, and refused to advertise in said counties, or in any of them, the notice required by law by him to be advertised and that a demand has been made upon said respondent before the institution of these proceedings that respondent forthwith publish and advertise said official notice so required by him to be made under the provisions of said act; that the respondent after such demand has failed, neglected, and refused to publish said notice in said counties or in any of them.

By the answer and return of the respondent it is admitted that all of the documents and instruments in the matter of the incorporation and organization of the Golden Gate Bridge and Highway District claimed by the petitioners in their amended petition to have been filed in the office of respondent have been filed therein in accordance with the provisions of said act of the legislature providing for the incorporation and organization of the Golden Gate Bridge and Highway District claimed by the petitioners in their amended petition to have been filed in the office of respondent have been filed therein in accordance with the provisions of said act of the legislature providing for the incorporation and organization of bridge and highway districts. Said answer and return further shows that all of said proceedings in the matter of the incorporation and organization of the Golden Gate Bridge and Highway District above referred to had been presented to him

and filed in his office by the second day of December, 1925, and that thereafter and on the seventeenth day of December, 1925, there was also tendered to him and received by him in the office of the Secretary of State a document purporting to be a copy of Ordinance Number 222 passed by the board of supervisors of the county of Mendocino on the fifteenth day of December, 1925, entitled "An Ordinance Repealing Ordinance No. 220, Adopted January 27th, 1925, Which Said Ordinance Declared the Intention of the County of Mendocino to Unite With Other Counties Adopting Like Ordinances To Form a Bridge and Highway District, and Directing the Circulation of a Petition for that Purpose," and that there was also on said day presented and tendered to him a resolution passed by the board of supervisors of Mendocino County on the fifteenth day of December, 1925, purporting to revoke, annul, and cancel and set aside said Ordinance Number 220; furthermore, on the twenty-first day of January, 1926, there was tendered to and received by him in the office of the Secretary of State a document purporting also to be a certified copy of said Ordinance Number 222 passed by the board of supervisors of the county of Mendocino on the fifteenth day of December, 1925, whereby it was sought to repeal said Ordinance Number 220; furthermore, on the twenty-first day of January, 1926, there was tendered to and received by him in the office of the Secretary of State five several documents, identical in form, and purporting to be signed by 180 electors of the county of Mendocino who had theretofore signed the petition for the formation of the Golden Gate Bridge and Highway District which had been theretofore circulated in said county of Mendocino and being the same petition which had been certified as sufficient by the county clerk of said county of Mendocino, and by said clerk transmitted to and filed in the office of respondent. The persons signing said last-named five documents each asked to withdraw his name from said petition for the formation of said district. (By deducting said 180 names from the number signed to said original petition by the electors of Mendocino County, the said original petition would be insufficient and would bear the names of less than ten per cent of the qualified electors in said county voting for Governor at the last general election immediately preceding the circulation of said petition.)

The position of respondent as set forth in the answer and return is that with the instruments and documents presented to him as above referred to he is uncertain as to the proper course for him to pursue, and he is in doubt whether he shall publish the required notice as prescribed by said act in the county of Mendocino or in the other counties within said proposed district or at all.  However, the *amici curiae* appearing herein and representing the board of supervisors of the county of Mendocino and various organizations and individuals and taxpayers of said county and of other counties interested in resisting the formation of the proposed district take the position that said writ should not issue for any purpose whatever.  The first contention of the *amici curiae* is that, by the withdrawal of the 180 names from the original petition received by respondent from the county of Mendocino, said petition is reduced below the number required by the provisions of said act and is therefore insufficient, and no further action can be taken in the proceedings to incorporate said district, at least so far as said county of Mendocino is concerned.  [1]  This contention involves the right of the signers of said original petition to withdraw their names therefrom after the same has been certified as sufficient by the county clerk of the county of Mendocino and presented to and filed with the Secretary of State as provided by said act.  The right of persons signing petitions to be presented to and acted upon by public officials, to withdraw their names therefrom has been before the appellate courts of this state on a limited number of occasions.  In the case of *Locher v. Walsh,* 17 Cal. App. 727 [121 Pac. 712], it appeared that a petition had been filed with the city clerk of the city of Auburn praying that a certain ordinance relating to the regulation of the sale of intoxicating liquors in said city be submitted to the vote of the electors thereof.  After the clerk had examined the same and had attached his certificate thereto that said petition was signed by more than thirty per cent of the qualified voters of said city, certain of the signers of said petition attempted to withdraw their names therefrom by handing to the clerk a request that their names be withdrawn from said petition.  The court in this case held "that the clerk had jurisdiction to determine the sufficiency of the petition as filed, and having determined that it was sufficient, and having so found

and certified before any request for withdrawal was made, such request was too late for the petitioners to exercise any such right or to divest the clerk of jurisdiction." This case was followed and approved in the later case of *Lamb* v. *McLaren,* 28 Cal. App. 632 [153 Pac. 985]. In this latter case a petition was filed to recall a supervisor. The petition was referred to the clerk and certified by him to be sufficient, but, after it had been certified to the board by the clerk as sufficient, certain of the signers attempted to withdraw their names from the petition and thus to reduce it below the number of signers required by law. It was held that upon the certification by the county clerk of the sufficiency of the petition the duty then devolved upon the board of supervisors to order the election and the superior court had no jurisdiction to enjoin the board from so acting on the ground that after such certification and before the calling of the election certain signers to the petition had attempted to withdraw their names therefrom so as to reduce the number below that required to give the board authority to call the election. In *Beecham* v. *Burns,* 34 Cal. App. 754 [168 Pac. 1058], certain signers of a recall petition requested the clerk to withdraw their names therefrom after the petition had been filed with the clerk and before that officer had certified the result of his examination as required by the statute. The court held: "In our opinion, the signers of such petitions may not withdraw their names or have their names withdrawn by the clerk at any time after the petition has been filed."

Outside this state we find that the right of persons signing a petition to withdraw their names therefrom has frequently been before the courts of other jurisdictions. In the decided cases from other states we find many which are in accord with those from our own state above mentioned. In *Mohr* v. *Seattle,* 69 Wash. 68 [109 Pac. 309], it was held that under a charter provision that the city controller shall verify the sufficiency of the signatures to a referendum petition and imposing no duty upon the city council in that regard, it was the duty of the controller to determine the sufficiency of the signatures to the petition and after action had been taken by him no name might be withdrawn from the petition. In the case of *Sim* v. *Rosholt,* 16 N. D. 77 [11 L. R. A. (N. S.) 372, 112 N. W. 50], the supreme court of North

Dakota, after an examination of a large number of authorities upon the question of the right of a signer of a petition to withdraw therefrom, arrives at the following conclusion: "Upon examination it will be found that most of these cases relate to petitions for the removal of county seats, or are based upon a statute different from ours, and it will also be found that they do not support the right of petitioners to withdraw their names after the sufficiency of such petition and the qualifications of the petitioners have been passed upon by the board authorized to act thereunder. On the contrary, they will be found to support respondents' theory that, after the board has passed upon the sufficiency of such petition, it is thereafter too late to withdraw therefrom." In a note to this case found in 11 L. R. A. (N. S.), *supra,* we find it said that: "Even the cases which allow the most liberal margin of time for withdrawal seem to recognize that this right to withdraw may not be exercised so as to defeat the jurisdiction, after the jurisdiction of the body authorized to act has been determined." (Citing *Littrell* v. *Vermillion County,* 198 Ill. 205 [65 N. E. 78].) As against these authorities the *amici curiae* have cited but two California cases —*McAulay* v. *Board of Supervisors,* 178 Cal. 628 [174 Pac. 30], and *Covell* v. *Lee,* 71 Cal. App. 361 [235 Pac. 79]. In neither of these cases, however, were the withdrawals attempted to be made after the petition had been filed with the person or board whose duty it was to act thereon. In *McAulay* v. *Board of Supervisors, supra,* certain signers of a petition for the organization of an irrigation district asked to have their names withdrawn from said petition prior to the time said petition was to be presented to the board of supervisors. This court held that they could effectively withdraw their names therefrom. It will be observed, however, that said petition at the time of said withdrawal had never been presented to the board of supervisors, and accordingly it had never been passed upon by said board or by any officer whose duty it was to examine it and determine its sufficiency. In the case of *Covell* v. *Lee, supra,* the petition was one for the organization of a joint union high school district and was directed to the superintendent of schools as the law provided. It was signed by the required number of electors from each of the school districts to be included

in the proposed high school district. Before the petition had been presented to the superintendent of schools, three electors from Plainfield School District (one of the districts to be included in said proposed union high school district), who had signed the original petition, signed written requests, addressed to the superintendent of schools, asking that their names be withdrawn from the petition. These written requests were presented to the superintendent of schools before the original petition was presented or filed with such officer. The superintendent of schools in computing the number of names signed to said petition rejected these three names, thus reducing the number of signers thereto from the Plainfield School District below the number required by law. The district court of appeal, upon the authority of *McAulay* v. *Board of Supervisors, supra,* sustained the action of the superintendent of schools in rejecting said three names and held that they had a right to withdraw from said petition. It will be observed that in this case, like the case of *McAulay* v. *Board of Supervisors, supra,* the signers seeking to withdraw from the petition presented their request for withdrawal before the petition had been presented to the officer whose duty it was to act thereon and, of course, before said officer had taken any action to determine the sufficiency of the same. A large number of cases from other jurisdictions are cited by the *amici curiae* in support of the right of the signers to withdraw from petitions which they had previously signed. Many of these arose from statutes entirely unlike our own and in cases where the facts were so different from those in the present proceeding as to detract materially from their value as precedents to be followed in this action. From the study we have been able to give to these authorities we are forced to agree with the author of the note to *Sim* v. *Rosholt,* in 11 L. R. A. (N. S.), *supra,* wherein he stated: "Even the cases which allow the most liberal margin of time for withdrawal seem to recognize that this right to withdraw may not be exercised so as to defeat the jurisdiction, after the jurisdiction of the body authorized to act has been determined."

The record in the present proceedings shows that the ordinances passed by the boards of supervisors of Del Norte, Mendocino, Sonoma, Napa, and Marin and by the board of supervisors of the city and county of San Francisco had

all been passed and petitions in compliance with these ordinances had all been circulated and signed by electors of said counties, respectively, and that all said petitions had been presented to the county clerks of the respective counties and to the registrar of voters of said city and county, and that these officers had certified that the petitions presented to them, respectively, were sufficient and that said ordinances and the said petitions with the certificates of the certifying officers attached thereto had all been filed in the office of the respondent, the Secretary of State, and also that the affidavits of the nonpassage of ordinances in the counties of Humboldt and Lake had been filed in the office of the respondent, before the board of supervisors of Mendocino County had adopted the resolution declaring it not for the best interests of Mendocino County to join in said proposed district and before the board of supervisors of said county had taken any action to repeal or rescind their former ordinance of intention to join said district, and before any copy of said resolution or any copy of said repealing ordinance or before the petition signed by the 180 electors of Mendocino County asking to have their names withdrawn from the original petition had been filed in the office of respondent. To state the matter more briefly, by December 25, 1925, all steps required by the statute to be taken by either the boards of supervisors or the electors of the counties embraced within the boundaries of the proposed district had been taken by said boards of supervisors and by said electors and all the papers, documents, and instruments required by said act to be presented to the respondent in order to require him to publish the notice demanded of him in said proceeding had been presented to and filed by respondent in his said office. It therefore became the duty of respondent upon receipt by him of said documents to publish said notice as required by the statute. Upon the receipt by him of said documents he acquired jurisdiction to proceed under said statute and to perform the duties required of him by the terms thereof. Any attempt thereafter of any of the original signers of any of said petitions to withdraw therefrom, according to the great weight of authority, was ineffectual and could not divest respondent of jurisdiction to proceed as directed by the statute. The first of the documents, whereby Mendocino County sought to withdraw from said district, that was filed

in the office of respondent was the certified copy of the resolution adopted by the board of supervisors of said county on December 15, 1925, and it was filed in the office of respondent December 17, 1925. Thereafter there was filed with respondent two certified copies of the ordinance passed by the board of supervisors of Mendocino County, whereby they attempted to repeal the ordinance declaring it the intention of said county to join in said district, and on January 21, 1926, the request signed by 180 of the persons on the original petition from said county attempting to withdraw their names from said original petition was filed with respondent. Under these facts and circumstances we are forced to the conclusion that the attempt by the signers of said petition to withdraw therefrom after said petition had been certified to as sufficient by the county clerk and thereafter filed with respondent was too late and was therefore ineffectual for any purpose whatever.

[2] The same conclusion must be reached, we think, in regard to the attempt of the board of supervisors to repeal the resolution of intention to join said district. "There is, . . . a distinction between the permanent or continuing powers of the board and those that are to be exercised once for all for a specified occasion only, as in the proceedings of the kind before us; for in the latter case the power to repeal the act after it had been finally executed is from the nature of the case clearly excluded." (*Vernon v. Board of Supervisors,* 142 Cal. 513, 516 [76 Pac. 253].) Continuing, the court in this case says: "there is no longer any power to rescind, and this, for the double reason that the powers granted to the board have been exhausted, and that vested rights have accrued." The court in the Vernon case was considering the right of a board of supervisors to rescind a resolution defining the boundaries of a proposed town and providing for an election to determine whether the territory included within said boundaries should be incorporated under the Municipal Corporation Act. It held that the board's action rescinding its resolution providing for said election was valid, as it had been taken before the election was held and under a misapprehension of the real facts before the board at the time of its passage. We refer to this case more particularly for the reason that it brings out clearly the distinction between the general powers of a

board of supervisors as to the enactment and repeal of ordinances and those that are exercised in proceedings of the kind before us. The board of supervisors of the county of Mendocino having passed the ordinance required by the statute and the petition provided for by said ordinance having been circulated, signed, certified, and presented to the respondent (which proceedings might be compared with the holding of an election under the Municipal Corporation Act), it was then too late for said board to repeal said ordinance. The powers granted it under the statute had become exhausted. [3] Nor do we think that there is any merit in the further contention of the *amici curiae* that the passage by the board of supervisors of Ordinance Number 220, declaring it to be the intention of said county to join the bridge and highway district, is but an offer or proposal on the part of the county and that it may be withdrawn or revoked at any time before its acceptance. [4] Conceding it to be an offer or proposal only, it was according to statute and made "to unite with such other counties as may adopt like ordinances." As we have already seen, four of the above counties and the city and county of San Francisco adopted like ordinances as that passed by the board of supervisors of Mendocino County, and following the passage of said ordinances they took all proceedings required of them by said statute in order to join said bridge and highway district. The offer, therefore, made by the county of Mendocino was fully accepted by the other counties to whom it was made and the attempt of the board of supervisors to withdraw the same thereafter was too late and accordingly ineffectual. [5] The additional contention of the *amici curiae* is also untenable, that is, that the offer was made to join a district composed of eight counties, including Humboldt and Lake Counties, and that as these two last-named counties refused to join in said district it was impossible to accept the offer as tendered. The ordinance passed by the county of Mendocino purported on its face to have been enacted in accordance with the act of the legislature providing for the incorporation of bridge and highway districts, the second section of which provides that: "The several boards of supervisors of said counties or parts of counties, may adopt an ordinance to the effect that the county, or part of county, intends to unite with such other counties as may adopt like ordi-

nances to form such district, . . . " The legal effect of the ordinance passed by the board of supervisors of the county of Mendocino was that it intended to unite, in the language of the statute, "with such other counties as may adopt like ordinances." It was clearly the intention of the board of supervisors to adopt an ordinance in compliance with the terms of the statute. In our opinion the ordinance adopted by them met these requirements. Its offer then was to unite with such other counties as might adopt similar ordinances. It was not impossible to accept said offer so long as any one or more of said counties passed a similar ordinance, and the passage of such ordinance by any of said other counties was of itself an acceptance of said offer of Mendocino County . to join in said district.

[6] The *amici curiae* claim that the proceedings taken by the respective counties to incorporate said bridge and highway district are fatally defective in that they fail to set forth or describe the project for which the district was proposed to be incorporated. It is true that the project for which it is proposed to form the district is not set forth nor mentioned in either the ordinance passed by the board of supervisors or in the petition circulated and signed by the electors. Nothing in the act provides that the project for which it is proposed to form the district shall be set forth in any particular or specified manner or shall be described or contained in any particular or specified document or instrument which may form a part of the proceedings taken for the incorporation of the district. By section 13 of the act it is made the duty, after the organization of the district, of the board of directors and other officers of the district, "to prepare plans, both engineering and financial, for the purpose of putting into operation the project for which the district has been organized," and in section 14 of said act it is further provided, "that no taxes shall be levied by the board under the provisions of this section for the purpose of carrying out new projects after the original project for which the district was formed has been completed." It would appear from these sections that the project for which the district is formed should be definitely designated somewhere in the proceedings in order, at least, that the board of directors of the district might know the extent and the limits to which they might proceed after the organi-

zation of said district. In fact, the object and purpose of the district, or its project, is a matter of first importance to all electors of the counties embraced within its limits. While it is true that the project is not set forth either in the ordinance or in the petition, yet it is claimed by petitioners that it sufficiently appears elsewhere in the proceedings. By section 3 of said act it is provided that: "The said ordinance (referring to the ordinance of intention to join the district) may be enacted by the board of supervisors at any time after application shall be made to them for such purpose, . . . " It is alleged in the amended petition, and not denied in the answer and return, that written applications were filed with the board of supervisors of each of the counties and of the city and county originally intended to be included within the boundaries of the proposed district and "That said applications and each of them definitely designated the bridging of the Golden Gate as the object and purpose for which a bridge and highway district was to be formed." It is further alleged by petitioners, and not denied, that it was in response to these written applications that the boards of supervisors of the respective counties and of the city and county passed the ordinances declaring it to be the intention of said counties and of said city and county to join in the organization of said district. It will thus be seen that there is officially of record in each of the counties of said district a document among the proceedings to incorporate said district in which the object and purpose of the project for which said district was to be formed is definitely and distinctly set forth. This, we think, is all that is required under the statute. It will be seen from an examination of the terms of the statute that no directions are contained therein requiring that the project for which said district is to be formed shall be stated either in the ordinance to be passed by the supervisors or in the petition to be circulated and signed by the electors. The boards of supervisors of the respective counties were by the written applications filed with them duly and sufficiently apprised of the project contemplated for the formation of the district. The petitions signed by the electors of the respective counties contained a prayer for the incorporation of a district under the provisions of said statute "to be known as the

Golden Gate Bridge and Highway District.'' Conceding that this was no notice to them that the project of the proposed district was to bridge the Golden Gate, it was sufficient to put them upon inquiry as to the real project contemplated by the incorporation of said district, and from the fact that they signed the petition it must be assumed that they satisfied themselves of the nature of said project and that they favored their county joining in said district. While we consider that it would have been the better practice to have had the project of the proposed district set out either in the ordinance or in the petition or both, yet we are not prepared to say that the failure to so set it out or to refer to it in said ordinance or petition renders the proceedings invalid so long as such project is set forth in full and shown in the written applications on file with the boards of supervisors of the counties to which they were presented.

[7] Various constitutional grounds are urged against the validity of the statute providing for the incorporation of bridge and highway districts. Among these grounds are that, by the terms of the statute, it seeks to deprive persons of their property without due process of law and that it seeks to take private property for private use. It is also contended that more than one subject is embraced within the title of said statute. We do not think that there is any merit in any of these contentions, nor do we feel that any extended answer thereto would serve any useful purpose.

[8] A further objection urged against the validity of the statute upon constitutional grounds deals mainly with the provision thereof defining the duties of boards of directors of said districts and particularly with the powers given to said boards by the statute to levy and collect taxes. It is claimed that as the directors of said district are appointed by the boards of supervisors of the counties composing said district and are not elected by the electors of said counties that they have no power to levy taxes. Even assuming that this point is well taken and that the attempt to clothe the directors of said district with power to levy taxes is beyond the constitutional authority of the legislature, yet we seriously doubt whether this question can be raised in this proceeding instituted for the sole purpose of testing the validity of those provisions of the act providing for the incorporation and formation of said district. The district when incorpo-

rated may be a valid and constitutional agency of the state, although some of the powers with which the legislature may have sought to invest the directors thereof are invalid and unconstitutional. The result would be that in a proper proceeding the court might restrain any attempt on the part of said directors to exercise such illegal and unlawful powers. But these illegal provisions, if any such there are in the statute, present no good ground why the district should not be incorporated, nor will they affect the legality of the district when incorporated. It may be that a board of directors formed as contemplated by the statute would be without power to levy taxes as provided in said act. If this would hereafter be made to appear, undoubtedly the legislature could, and probably would, provide for some different manner or means of raising taxes in the district, or possibly might provide for the election of said directors by a direct vote of the electors of the respective counties. This would be a mere defect in the machinery of the district and could be cured by proper legislation. It could not be held to invalidate the proceedings taken under the statute to incorporate the district. [9] The same may be said in regard to the objection that there is no provision in the statute providing for the equalization of the assessments of property in the different counties. If by the failure to provide for the equalization of assessments it should be held that any levy of taxes sought to be imposed by the directors of the district was illegal, this defect in the statute could be remedied by proper legislation to be thereafter enacted. In our opinion, therefore, there is no relevancy in any of these objections in so far as they are made or relied upon for the purpose of invalidating or rendering unconstitutional the provisions of the statute providing for the incorporation of such district. It is, therefore, unnecessary for us to express any opinion as to the validity of those provisions of the statute conferring upon the board of directors of said district power to levy and collect taxes nor the effect upon said statute of its failure to provide for the equalization of the assessments of property in the various counties of said district. These are matters not properly before us in this proceeding.

[10] The final contention of the *amici curiae* is that the act in question is unconstitutional in that it is violative of

article XI, section 13 of the constitution. Practically the same question was raised to the validity of statutes creating sanitary districts and county water districts as is now raised by the *amici curiae* against the constitutionality of the bridge and highway act. In each case it was held that the statute in question did not violate the above provisions of the constitution (*Woodward* v. *Fruitvale Sanitary Dist.*, 99 Cal. 554 [34 Pac. 239]; *Henshaw* v. *Foster*, 176 Cal. 507 [169 Pac. 82]). We can see no valid distinction between the questions involved and decided in those cases and that raised by the *amici curiae*, in the present proceeding under their final contention as to the constitutionality of the bridge and highway act. Upon the authority of these cases we have no hesitancy in holding that the statute under consideration does not violate article XI, section 13, of the constitution of this state.

It is therefore ordered that the peremptory writ issue as prayed for.

Richards, J., Shenk, J., Waste, C. J., Seawell, J., and Sullivan, J., concurred.

Rehearing denied.

Preston, J., dissented.