**GARLAND CO., Limited, v. FILMER et al. (GOLDEN GATE BRIDGE AND HIGH-WAY DISTRICT, Intervener).**

**DEL NORTE CO. v. SAME.**

Nos. 3109, 3174.

District Court, N. D. California, S. D.
July 16, 1932.

Warren Olney, Jr., J. M. Mannon, Jr., A. Crawford Greene, and James D. Adams, all of San Francisco, Cal. (McCutchen, Olney, Mannon & Greene, of San Francisco, Cal., of counsel), for plaintiffs Garland Co. and Del Norte Co.

Thelen & Marrin, of San Francisco, Cal., for defendant W. W. Felt.

George H. Harlan, of San Rafael, Cal., and W. H. Orrick, of San Francisco, Cal. (Orrick, Palmer & Dahlquist, of San Francisco, Cal., of counsel), for intervener and other defendants.

Allen G. Wright, of San Francisco, Cal., for San Francisco Chamber of Commerce, amicus curiæ.

James H. Howard, of Los Angeles, Cal., for Metropolitan Water Dist. of Southern California, amicus curiæ.

John J. O'Toole, of San Francisco, Cal., for City and County of San Francisco, amicus curiæ.

Lawrence Livingston, of San Francisco, Cal., for Golden Gate Bridge Ass'n, amicus curiæ.

KERRIGAN, District Judge.

Suits have been brought by two taxpayers in the Golden Gate bridge and highway district, which will be hereafter referred to as the district, to enjoin the issuance of bonds by the directors of the district and to remove the cloud upon the title to plaintiffs' property arising from the threatened exercise of the power of taxation to meet the principal and interest of the bonds by the district. The plaintiff in the Garland Company case is a taxpayer of the city and county of San Francisco, and the plaintiff in the Del Norte Company case is a taxpayer in Del Norte county. The district has intervened in each case and the cases were consolidated for trial. Various public interests and public institutions have appeared as amici curiæ.

The project of bridging the Golden Gate, the entrance to the harbor of San Francisco Bay, to facilitate the movement of traffic in northern California has been agitated for a number of years. The Golden Gate bridge and highway district was organized for the purpose of building the bridge under the Bridge and Highway District Act of 1923 (Cal. Stats. 1923, p. 452) and the amendment thereto of 1925 (Cal. Stats. 1925, p. 714). The principal attack upon the validity of the taxing power of the district arises from the fact that all of the coast counties from San Francisco to the Oregon line are included within the district with the exception of Humboldt county, a large and prosperous county in the northern part of California, between Mendocino and Del Norte counties. The main artery of traffic, the Redwood Highway, passes through all of these counties including Humboldt county. It is conceded that Humboldt county will be benefited by the erection of the bridge. It is accordingly claimed that a district, consisting of noncontiguous territory with an area greatly to be benefited, excluded may not validly exercise the taxing power. This question and other questions concerning the validity of the formation of the district and of the bonds have been raised in the California courts and passed upon by the California Supreme Court in the cases of Doyle v. Jordan, 200 Cal. 170, 252 P. 577; Wheatley v. Superior Court, 207 Cal. 722, 279 P. 989, and companion cases Dempster v. Superior Court, 207 Cal. 795, 279 P. 991; Esaisa v. Superior Court, 207 Cal. 796, 279 P. 992; and Crawford v. Superior Court, 207 Cal. 797, 279 P. 992, and Golden Gate Bridge and Highway District v. Felt (Cal. Sup.) 5 P.(2d) 585.

The method of organization of the district is in line with a new tendency in governmental organization whereby large projects may be carried out by portions of the state comprised of more than one county or other governmental unit. The Bridge and Highway District Act (St. Cal. 1923, p. 452, § 2) provides that "a bridge and highway district may be organized consisting of one or more counties or parts of a county or counties, and including a city and county." The board of supervisors in each of the counties interested in uniting to form a district takes the first step by adopting an ordinance providing that the county or a part thereof "intends to unite with such other counties as may adopt like ordinances." Subsequently a petition for the formation of the district, to which is attached a copy of the ordinance, must be signed by 10 per cent. of the number of qualified electors who voted at the last election for Governor in that county and must be filed with the secretary of state of California. There are alternative methods of procedure provided by the act, but I am outlining only that followed in the organization of this district. After all petitions have been filed with the secretary of state, he is required to publish for at least three successive weeks in at least one newspaper in each county the text of the petitions and a notice fixing the time within which protests against the formation of the district and against the inclusion of lands within the district may be filed. The act then provides for the hearing of protests by the superior court for the respective counties in which the protests are filed with right of appeal to the California Supreme Court. After these proceedings have been completed, the secretary of state shall issue a certificate of incorporation of the district with such boundaries as have been judicially determined.

It is apparent that, since each county must elect to co-operate in forming a district, one or more counties within the contemplated area may refuse to come in and thus attempt to prevent the formation of the district. To meet this contingency, the Legislature in 1925 (Cal. Stats. 1925, p. 714, p. 715, § 2) adopted an amendment providing in effect that, if any county shall fail to pass the necessary ordinance within a certain period after application to do so is made by an elector and no initiative is commenced in lieu thereof, the county shall be excluded from the district and the secretary of state shall issue the certificate of incorporation in the same manner as if the county had been excluded by order of the court.

The proceedings to form the Golden Gate bridge and highway district were instituted by electors making identical written applications to the boards of supervisors in the counties of Del Norte, Humboldt, Mendocino, Lake, Sonoma, Napa, Marin, and the City and County of San Francisco, reciting that they were members of a voluntary organization whose object is to form a bridge and highway district and "eventually to bridge the Golden Gate," and asking the supervisors to pass an identical ordinance of intention to unite with the several counties or parts thereof to form a bridge and highway district. This ordinance was passed and the petitions signed in each of the counties with the exception of Humboldt, Lake, and Del Norte, prior to the amendment of 1925. The district, if formed exclusively by these counties, would have consisted entirely of contiguous territory stretching from the southern boundary of the city and county of San Francisco to the northern part of Mendocino county and including Napa county. Lake county never completed the steps to join the district, but the elimination of this county has caused no serious difficulty since the main highway of which the bridge would be a part does not cross it. Humboldt county had refused to pass the ordinance, and it was well known that this county would stay out of the district. After the amendment of 1925 had gone into effect permitting the formation of a district by noncontiguous territory, Del Norte county, with full knowledge that Humboldt and Lake counties would not come into the district, took the steps to join it. After all necessary papers had been filed with the secretary of state, he was requested to publish the petitions and notice of time for protests. He refused, and a writ of mandate to compel him to proceed according to the statute was sought and granted in Doyle v. Jordan, supra. The answer of the secretary of state set forth that, after filing all necessary papers, Mendocino county had attempted to withdraw from the district, and for this reason he refused to proceed with the formation of the district. In this case amici curæ appeared in behalf of various interests to question the validity of the formation of the district. The California Supreme Court held that Mendocino could not then withdraw from the district and that the district might validly be formed. The opinion does not discuss the effect of the district's being composed of noncontiguous ter-

ritory; the validity of the taxing powers of the district under the Constitutions of California and of the United States is referred to, but an opinion as to it is expressly withheld.

In accordance with the writ of mandate, the notice was published and protests against the formation of the district and against the inclusion of lands therein were received in all of the counties except Del Norte. These were heard by a judge designated by the judicial council to hear the protests in each of the counties where they were filed. The boundaries of the district were fixed in these cases and the several proceedings were affirmed in Wheatley v. Superior Court and its companion cases, citations supra. One of the companion cases was appealed to the United States Supreme Court but the appeal was dismissed for want of a substantial federal question. Crawford v. Superior Court, 281 U. S. 692, 50 S. Ct. 238, 74 L. Ed. 1121. The constitutionality of the taxing powers of the district was again raised in these cases, but the Supreme Court of California reiterated its position stated in Doyle v. Jordan that the only question before it was the validity of the formation of the district, and that the validity of the taxing powers should be determined when the district attempted to exercise them.

The board of directors was chosen and the organization of the district was completed after the decision in the Wheatley Case. The district has levied taxes and expended in excess of $400,000 in acquiring rights of way, making geological and other studies, in preparing plans and specifications for the bridge, and other activities preliminary to building the bridge. A bond election was held in 1930 and the issuance of $35,000,000 in bonds was authorized by a vote impressively in excess of the necessary two-thirds. Legislation validating the formation of the district and the bond election and clarifying the provisions of the act permitting the payment of interest and principal of the bonds from taxes was adopted in 1931 (Cal. Stats. 1931, p. 77). There had been a previous validating statute passed in 1929 which affected only the validity of the district. Cal. Stats. 1929, p. 165. Following this legislation, the board of directors advertised the bonds for sale and received a bid for $6,000,000 thereof with the condition that the district obtain a decision from the California Supreme Court that the bonds are supported by the full taxing power of the district. Felt, the secretary of the district, re-

fused to sign the bonds questioning their legality and the constitutionality of the taxing power of the district. The district sought a writ of mandate to compel him to sign the bonds which was granted in the case of Golden Gate Bridge and Highway District v. Felt, supra. The present consolidated cases have been brought by taxpayers of the city and county of San Francisco and of Del Norte county, respectively, to enjoin the issuance of the bonds and the exercise of the taxing power by the district and for a decree quieting title, raising all federal questions which were raised in the Felt Case. Plaintiffs were not parties in the Felt Case. The attorneys of the Garland Company appeared as amici curiæ therein but refused to intervene. These same attorneys now represent the Del Norte Company.

It is pleaded and seriously contended that, because of these cases decided by the Supreme Court of California, all matters raised herein are res judicata. If that is true, the present cases are disposed of because all substantial questions raised in them were raised in the state court cases. In answer it is claimed that only the Felt Case decided any federal questions and that that case was based upon a fictitious and collusive proceeding. Its fictitious and collusive character was charged in the Felt Case, and the Supreme Court therein held that it was not fictitious and collusive upon the authority of a long line of cases in which the validity of bonds and other public contracts had been adjudicated in applications for writ of mandate directed to a public officer doubtful as to the validity of the law under which he was called upon to act. Price v. Sixth District Agricultural Ass'n, 201 Cal. 502, 516, 258 P. 387; Los Angeles County Flood Control District v. Wright (Cal. Sup.) 2 P.(2d) 168, and other cases cited on page 590 of 5 P.(2d) of the Felt Case. These cases are authority for the proposition that, if a genuine controversy exists as to the validity of the law, it is immaterial that the public officer was friendly to the litigation and hoped that the judgment would be against him. Adopting the finding of the Supreme Court of California upon this point I find that the Felt Case was not fictitious or collusive. The case of Doyle v. Jordan is governed by the same principles. Since the Wheatley and companion cases were brought by taxpayers, no such claim is made as to the character of these cases.

It is the rule in California that, in the absence of fraud and collusion, a judgment

for or against a municipal corporation or other local governmental agency or district, or its officers properly representing it, upon a question of general public interest, is binding upon all taxpayers, whether parties to the suit or not, as to all questions which were or might have been litigated therein. The claim that a statute is unconstitutional as to taxpayers may be raised in a suit by a taxpayer or in a suit against a public officer such as a mayor or secretary of state, or secretary of a district, as in the Felt Case, called upon to act under the statute. Price v. Sixth Dist. Agricultural Ass'n, supra, following State v. Willis, 19 N. D. 209, 124 N. W. 706; Floersheim v. Board of Commissioners, 28 N. M. 330, 212 P. 451. Were there no claim that plaintiffs' rights under the Constitution of the United States had been invaded, the plea of res judicata would be a complete defense to these cases. R. S. § 905 (28 USCA § 687) provides that judicial proceedings in a state court shall have such faith and credit given to them in every court within the United States as they have by law or usage in the court of the state from which they are taken. It has long been established, however, that, if the effect of a decision is to deprive a person of his rights without due process of law, it will not be given such faith and credit. Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565. It is in itself a deprivation of property without due process to "give a conclusive effect to a prior judgment against one who is neither a party nor in privity with a party therein." Postal Telegraph Cable Company v. City of Newport, 247 U. S. 464, 38 S. Ct. 566, 571, 62 L. Ed. 1215. The validity of the taxing power of the district under the due process clause of the Constitution of the United States (Const. Amend. 14) is the central controversy in this case. The California Supreme Court has expressly held in the Felt Case that the taxing powers of the district do not violate this clause. If, however, there is no right of appeal upon this federal question from the highest court of the state to the United States Supreme Court, the judgment in the Felt Case may not be pleaded as res judicata in the present cases. A determination of a federal constitutional question by a state tribunal is not conclusive if there is no right of appeal to the federal courts.

 The Supreme Court of the United States, differing from the California view, has held that a municipality or its officers may not represent or raise objections in behalf of taxpayers. City of Lampasas v. Bell, 180 U. S. 276, 21 S. Ct. 368, 45 L. Ed. 527; Smith v. Indiana, 191 U. S. 138, 24 S. Ct. 51, 48 L. Ed. 125; Tregea v. Board of Directors, 164 U. S. 179, 17 S. Ct. 52, 41 L. Ed. 395. That tribunal will not assume jurisdiction of an appeal by a public officer in which he questions the constitutionality of the law under which he is called upon to act in the interests of taxpayers. Smith v. Indiana, supra, is the leading case upon this point. The Supreme Court of Indiana, 158 Ind. 543, 63 N. E. 25, 214, 64 N. E. 18, 63 L. R. A. 116, had affirmed a judgment that a writ of mandate be issued to a county auditor to proceed under an assessment statute which he claimed was invalid as depriving taxpayers of their property without due process of law. The county auditor attempted to appeal to the United States Supreme Court on that ground and the court held that it had no jurisdiction over such an appeal. It took the view that the right of a public officer to question the constitutionality of a state statute as an excuse for refusing to enforce it is a purely local question, and, if permitted in the state courts, the officer cannot appeal from the judgment of the highest court in the state to the Supreme Court of the United States. The interest of an appellant to that court must be a personal and not an official interest. The theory of this decision has been followed and cited in Braxton County Court v. West Virginia, 208 U. S. 192, 28 S. Ct. 275, 52 L. Ed. 450; Stewart v. Kansas City, 239 U. S. 14, 36 S. Ct. 15, 60 L. Ed. 120; and Columbus & Greenville R. Co. v. Miller, 283 U. S. 96, 51 S. Ct. 392, 75 L. Ed. 861. It is contended by counsel for defendant that the last case overruled the earlier decisions. I do not believe that that is its effect. The appellant was not the county officer but a taxpayer sued by the county officer and therefore a party with a personal interest. Apparently Mr. Justice Hughes carefully stated the principle of Smith v. Indiana in his discussion that it might be apparent that there was no intention to depart from the earlier ruling. It is therefore clear that even though a public officer may represent taxpayers in state courts on constitutional questions he may not do so on an appeal to the United States Supreme Court. In the Felt and Doyle Cases, then, there was no right of appeal to the United States Supreme Court, and the judgments therein are not res judicata as to plaintiffs so far as federal questions are concerned. The Wheatley and companion cases stand

upon a different footing since taxpayers were parties litigant and had a right of appeal to the Supreme Court of the United States. Farncomb v. City and County of Denver, 252 U. S. 7, 40 S. Ct. 271, 64 L. Ed. 424. This right was in fact exercised in one of the companion cases, the Crawford Case, and, as before stated, the appeal was dismissed for want of a substantial federal question. All questions in the Wheatley Case are therefore res judicata and may not be relitigated in these proceedings.

■■ I do not regard seriously the contention that plaintiffs became bound by the decision in the Felt Case by appearing as amici curiæ. The Del Norte Company did not in fact so appear and had not at the time of the hearing in the Felt Case employed the counsel who now represent them. The counsel for the Garland Company, who likewise represent the Del Norte Company, appeared but only as amici curiæ, declining an invitation to intervene in behalf of their client. Amici curiæ appear by permission of the court to enlighten it by their assistance. Estate of Pina, 112 Cal. 14, 44 P. 332. Because the decision of the case may be important to them as a precedent affecting future litigation in which they will be interested, they are not thereby made parties and bound by the decision. Litchfield v. Crane, 123 U. S. 549, 8 S. Ct. 210, 31 L. Ed. 199; Stryker v. Crane, 123 U. S. 527, 8 S. Ct. 203, 31 L. Ed. 194; Coe v. Armour Fertilizer Works, 237 U. S. 413, 35 S. Ct. 625, 59 L. Ed. 1027. Furthermore the refusal of the invitation to intervene in the Felt Case did not make the Garland Company a party so as to bind it by the decision. Gratiot County Bank v. Johnson, 249 U. S. 246, 39 S. Ct. 263, 264, 63 L. Ed. 587; Western Union Tel. Co. v. Foster, 247 U. S. 105, 38 S. Ct. 438, 62 L. Ed. 1006, 1 A. L. R. 1278. In the Gratiot County Bank Case it is stated: "The rule is general that persons who might have made themselves parties to a litigation between strangers, but did not, are not bound by the judgment."

All points litigated or which might have been litigated in the Wheatley Case are, as I have said, res judicata as to plaintiffs. This case then places certain propositions involved in this litigation beyond the field of controversy. First, the sufficiency of the notice to taxpayers published by the secretary of state to file protests against the formation of the district and against the inclusion of lands within the district is established. Second, it disposes of the contention that the Contract Clause of the United States Constitution is violated as to all counties except Del Norte by incorporating the district under the amendment of 1925 when the ordinances of intention were adopted and the petitions circulated under the act of 1923. The California Supreme Court held that the district is a quasi municipal corporation and therefore "the terms upon which it was formed do not constitute a contract between the state and those within the district." Wheatley v. Superior Court, supra, at page 726 of 207 Cal., 279 P. 989, 991. Third, it establishes the validity of the organization of the district with its boundaries drawn so as to exclude the contiguous territory of Humboldt county.

Passing now to the effect of the decision in the Felt Case it is conceded that, as to all matters of California statutory and constitutional construction and interpretation, the rulings of the California Supreme Court are conclusive. Farncomb v. City and County of Denver, supra; Memphis & C. R. Co. v. Pace, 282 U. S. 241, 51 S. Ct. 108, 75 L. Ed. 315. As to matters in which a federal constitutional question is involved, the state court's decision is not conclusive upon this court, but, of course, is entitled to and will be given great weight.

There remain but two contentions of plaintiffs wherein it is claimed that their rights under the Constitution of the United States will be violated: First, that the exercise of the taxing power will take their property without due process of law; and second, that the bonds, if issued as authorized, will impair the obligation of their contracts.

■ Under the first proposition there are three main arguments: First, that the notice to plaintiffs to file protests was insufficient and invalid because it did not describe the object of the district; second, that there is an arbitrary and capricious selection of property to be taxed for the purpose of building the bridge; and, third, that there is an unconstitutional discrimination against some of the taxpayers because there is no provision for the equalization of assessments among the several counties comprising the district. The first contention has been settled by the decision in the Wheatley Case and is res judicata. The notice was sufficient. The difficulties involved in the second contention are largely resolved by the ruling in the Wheatley Case that the district is a quasi municipal corporation. The Supreme Court of California upheld the validity of the taxing powers of the district upon the ground

that it was not an assessment district but a quasi municipal corporation organized for a state purpose and that its power of taxation is not measured by the standard of the former but by that of the latter. It further held that the tax was a general tax for municipal purposes. The court said: "It is not an assessment district, where the tax must be levied in accordance with benefits actually received by the individual taxpayer. It is * * * a quasi municipal corporation. As such, its tax 'is not a tax or assessment on property directly benefited by the construction of some local improvement, but is a general tax levied just as, and for the same purpose that, any general municipal tax is imposed for carrying on the governmental functions and utilitarian objects of duly incorporated cities or towns.' In re Orosi Public Utility District, 196 Cal. 43, 58, 235 P. 1004, 1110. The inclusion of noncontiguous land in such a district is not a ground for constitutional attack. Nor is it a valid objection that other land which receives equal benefit is not included or for some other reason is not subject to tax." Golden Gate Bridge and Highway District v. Felt, supra, page 593 of 5 P.(2d).

The validity of the boundaries of the district is res judicata. Plaintiffs carefully and consistently distinguish between the validity of the district and the validity of its taxing powers. Conceivably a governmental agency might exist without the power to tax, but it would be so stripped of the power of action that its existence would be but the shadow of a public body without substance or strength. The determination that a public body may have certain boundaries without violating constitutional guarantees should have great argumentative weight in support of the proposition that a public body with those very boundaries may exercise the taxing power without infringing the same guarantees.

The soundness of the ruling in the Felt Case is further illuminated by a consideration of the nature and purpose of such quasi municipal corporations. They are formed by small governmental units of the state for the purpose of doing something beyond the resources of the component parts which will be of benefit to a large area. In this day of vast engineering projects such co-operation is necessary unless the state is to undertake the activity or to impose the duty of construction upon a certain area. Legislative policy has deemed it wiser that membership in these larger units be volun-

tary rather than compulsory. A single unit because of sentiment or prejudice peculiar to itself should not be permitted to obstruct an undertaking of great public importance. The amendment of 1925 was adopted to prevent such a thing occurring. If the situation were reversed and Humboldt county were small and lacking in wealth and Del Norte county were large and prosperous, it is obvious that the refusal of Humboldt county to enter the district should not and would not invalidate the taxing power of the district. Neither should it be invalidated because of the refusal of a large and prosperous county to become a part of the district.

The failure to include all territory benefited by an improvement in an assessment district is not fatal to the powers of the district so long as there is a reasonable basis of distinction between the property included and the property excluded. Fallbrook Irrigation District v. Bradley, 164 U. S. 112, 17 S. Ct. 56, 41 L. Ed. 369. Inevitably every great public improvement is of benefit to a whole region. A bridge over the Golden Gate will be a benefit to the whole state, particularly to the northern part of the state. Its benefit may even extend into Oregon and Washington. The Legislature might have authorized or directed that San Francisco county alone or San Francisco and Marin county build and pay for the bridge without violating the due process clause of the United States Constitution. Washer v. Bullitt County, 110 U. S. 558, 4 S. Ct. 249, 28 L. Ed. 249. See, also, Mobile County v. Kimball, 102 U. S. 691, 26 L. Ed. 238. If Del Norte county had not elected to come into the district, the district would have consisted entirely of contiguous territory and would have unquestionably been valid. The mere coming in of Del Norte county should not affect its validity. Del Norte county's entrance has lessened rather than added to the burdens of the taxpayers in the other counties.

Testimony was introduced for the purpose of showing that proportionally Del Norte county would receive more benefit from the bridge than Humboldt county. I do not believe that Del Norte county will receive a greater proportional benefit and I so find. Such a theory is not necessary to support Del Norte county's membership in this district. As I have previously stated this district is a quasi municipal corporation which Del Norte county has taken all legally necessary steps to join. The county

will be benefited and may elect to assume its share of the burden. Plaintiff Del Norte county had the opportunity to protest against the inclusion of its lands within the district and did not do so. It cannot therefore now raise the question that its property will not be benefited.

The third argument against the validity of the exercise of the taxing power was that there was no provision for the equalization of assessments among the several counties prior to the fixing of the tax rate. In the Felt Case at page 592 of 5 P.(2d), the Supreme Court of California found that the statute required only that an estimate of the taxes be made prior to the time when the boards of equalization meet. It further held that the taxing provisions of the statute involved the usual process of valuation by county boards of supervisors and the state board of equalization. The law as interpreted by the state Supreme Court makes provision for the equalization of assessments. "It must be presumed that such boards will properly perform the duties imposed upon them by the Constitution and the general law."

■ Passing now to the final proposition that the issuance of the bonds as planned will violate the clause of the United States Constitution (article 1, § 10, subd. 1) forbidding the passage of laws impairing the obligations of contracts, it is claimed that the amendment of 1931 to the Bridge and Highway Act (Cal. Stats. 1931, p. 77) has changed the obligation of the taxpayers of the district with reference to its bonds voted before the adoption of the amendment. Under the California law a bond election creates a contract between the municipal corporation or district and the taxpayers within it. O'Farrell v. Sonoma County, 189 Cal. 343, 208 P. 117. At the time the bond election was held, the statute provided with reference to the payment of principal and interest: "If the revenues of the district are, or in the judgment of the board of directors, will probably be inadequate for any cause to pay the principal or interest on any bonded debt of the district, as it becomes due, the board of directors must cause a tax to be levied as herein provided * * * for such deficit and to pay the amount of such principal and interest as the same becomes due, except that until the operation of the works of the district has commenced, and the same commenced to yield a revenue, the interest on the bonded debt shall be paid out of the principal obtained from the sale of

the bonds, and after the operation of its works no taxes shall be levied except for deficits, either actually incurred or estimated for the fiscal year in which the same are levied. * * *" Section 21 of the Bridge and Highway District Act, Cal. Stats. 1923, pp. 452, 463, as amended by St. 1925, p. 720, § 4.

Section 5 of the act of 1931, supra (St. Cal. 1931, p. 79), provides that "both the principal and interest of said bonds shall be paid from an annual tax levied upon all the taxable property within such district" with the proviso "that the proceeds of sale of said bonds may be used for the payment of interest on said bonds to the extent authorized or permitted by said act, and any revenues of such bridge and highway districts may be applied to the extent to which the same are available to the payment of principal and/or interest of the bonded indebtedness of any such districts." The California Supreme Court after a careful analysis of former section 21 and interpretation of that section in connection with other provisions of the act upon the same subject held that no substantial change was made by the act of 1931. It found that, under the original act, the primary obligation to meet the principal and interest of the bonded indebtedness was upon the taxpayers, and that the clauses referring to the payment of interest from the moneys obtained from the sale of bonds and the payment of both principal and interest from the revenues of the bridge at most created an ambiguity in the law. The amendment of 1931 did no more than clarify the ambiguity in the earlier law and declare the law as it previously existed. The Supreme Court in effect found that without the amendment it would have construed the law as placing the full taxing power of the district behind the payment of principal and interest of the bonds. The Supreme Court was construing and interpreting the statutes of its own state and by that construction and interpretation this court is bound. Since there has been no actual change in the law, the obligation of the taxpayers towards the bonds has not been changed and there has been no impairment of the obligation of contracts by the act of 1931.

This opinion is long and I do not feel that it should be further prolonged by a discussion of the two remaining questions raised by defendant. I therefore find without discussion that plaintiffs have not been guilty of laches and that plaintiffs' right of action is not barred by the statute of limitations.

In view of the discussion of the facts and the law in this opinion, I adopt it as my findings of fact and conclusions of law, and the motions of the respective parties for special findings are denied and exceptions noted. Parker v. St. Sure, 53 F.(2d) 706 (C. C. A. 9). °

Let decree be entered for defendants and intervener with costs.